**Troy Shonnard GLOVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00169–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Oct. 30, 2002.

Decided Oct. 31, 2002.

Rehearing Overruled Dec. 27, 2002.

Discretionary Review Refused June 25, 2003.

Ronnie Jo Cohee, Beaumont, for appellant.

Rodney D. Conerly, Assistant Criminal District Attorney, Wayln G. Thompson, Assistant District Attorney, Beaumont, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice GRANT.

On June 5, 2000, Troy Shonnard Glover was convicted of sexual assault of a child pursuant to Tex. Pen.Code Ann. § 22.011 (Vernon Supp.2002). The jury assessed punishment, enhanced by a previous felony conviction, at twelve years' imprisonment. In five points of error, Glover complains the evidence was both factually and legally insufficient to support his conviction. Glover further complains that hearsay testimony was erroneously admitted and that this amounted to a violation of his confrontation rights under the United States and Texas Constitutions.

The issue at trial was whether Glover, age twenty-six,[1] had sexual relations with A.H., the fourteen-year-old complainant. A.H. filed a complaint with the Beaumont police on May 14, 1999, but was unavailable to testify when the case was tried.[2] The issues in this appeal are centered primarily around the admission of hearsay statements of the complainant, A.H., as related in court by her mother, Diane.

In his first point of error, Glover asserts the evidence was legally insufficient to support his conviction. In reviewing a legal sufficiency challenge, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Williams v. State, 937 S.W.2d 479, 482–83 (Tex.Crim.App.1996).

A person commits the offense of sexual assault when he (1) intentionally or knowingly (2) causes the penetration of the anus or female sexual organ of a child by any

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

1. Evidence conflicted as to Glover's precise age, but all witnesses put his age between twenty-six and twenty-eight at the time of the offense.

2. By the time of the trial, both A.H. and her father had died. The circumstances of their deaths were not in issue at trial.

means. TEX. PEN.CODE ANN. § 22.011(a)(2)(A). A child means a person younger than seventeen years of age who is not the spouse of the actor. TEX. PEN. CODE ANN. § 22.011(c). Rather than alleging all statutory manners of committing the offense, the State only alleged that Glover intentionally and knowingly caused the penetration of the female sexual organ of A.H. by inserting his male sexual organ. The age (fourteen) and marital status (unmarried) of A.H. was uncontested and conclusively established at trial.

■ The State offered the following evidence of Glover's guilt. Ron Kyles, Sr. (A.H.'s uncle) ran Pleasure Island, a restaurant where Glover worked. Kyles, Sr. testified he overheard Glover admit that "he screwed the s——t out of [A.H.]," and that Glover would go to Mexico before he would go to jail. Ron Kyles, Jr. (A.H.'s cousin) also worked at Pleasure Island. He testified to what he termed an "attempted seduction" of A.H. by Glover. The flirtatious encounter included winks, smiles, touching, and games. He also testified (over objection) that A.H. had told him she had slept with Glover. Diane testified Glover admitted to her that he had picked up A.H. at one a.m. on May 15 from her father's house and taken her to his apartment. Paul Pirtle, a coworker of Glover, testified to a separate conversation with Glover wherein Glover admitted he thought A.H. was "hot," that he knew she was only fourteen, and that he had picked her up and had sex with her. Pirtle also related a second statement that Glover said he would "do whatever it took to . . . stop from going back to jail" if his liaison with A.H. were discovered. Kandi Phil-

lips, an ex-coworker of Glover, testified to a separate conversation during which Glover said he was facing statutory rape charges for having sex with A.H. When Phillips asked Glover if he had "slept with"[3] A.H., he said yes.

■ Glover complains there was no direct evidence of penetration of the female sexual organ of the victim as alleged in the indictment. He argues this renders the evidence legally insufficient. It is not necessary for a conviction to rest on direct evidence. One witness providing circumstantial evidence of each element satisfies the State's burden with respect to legal sufficiency. The State offered several different out-of-court admissions made by Glover, indicating that he had engaged in the charged conduct.

The State also offered the hearsay testimony of Diane. Glover argues that this evidence is inadmissible and that without this critical evidence, the State's case is both factually and legally insufficient. While the admissibility of the complained-of hearsay is discussed at length below, we will include the contested evidence in our review. When addressing a challenge to the sufficiency of the evidence, even erroneously admitted evidence must be considered. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991). Diane testified that A.H. had admitted to two different sexual encounters with Glover and that they had "used latex" or a condom.

Viewing all of the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of sexual assault of a child beyond a reasonable doubt. Glover's first point of error is overruled.

---

**3.** She stated on direct examination that Glover admitted he "had sex with" A.H., but on cross-examination allowed that the phrase may have been "slept with." Glover urges on appeal that this shows the testimony is not

credible. The jury determines the credibility of the evidence, not the appellate court. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim.App.1984).

In his second point of error, Glover asserts the evidence was factually insufficient to support his conviction. In reviewing a challenge to the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the verdict." *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996). We determine whether a neutral view of all the evidence, both for and against the verdict, demonstrates that the proof of guilt is so obviously weak it undermines confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). When performing this review, we give due deference to the jury's assessment of the weight and credibility of the evidence. *Id.* at 20. We will find the evidence factually insufficient only where necessary to prevent manifest injustice. *Id.* If we find the evidence factually insufficient, we vacate the conviction and remand for a new trial. *Jones,* 944 S.W.2d at 648; *Clewis v. State,* 922 S.W.2d 126, 133–35 (Tex.Crim.App.1996).

■ The only testimonial evidence offered by Glover in his defense was that of Diane. He re-called her to the stand to testify regarding a possible boyfriend who A.H. may have had at school. Glover also introduced several notes written by A.H. to a classmate. A note dated January 15, 1999, and written by A.H. to a friend read, "I would tell you all about last night but all of these wandering eyes don't need 2 know all about my sex life . . . ." A note by A.H. dated March 8, 1999, related how upset A.H. was about having to move away from a boy for whom she had strong feelings, while another (no date) read that she would do anything to be with him. The State introduced a separate note from April 15, 1999, wherein A.H. indicated she thought her parents were taking her to a doctor to "see if [she] had sex or something," but confided to her friend that she had not done so. A.H. also stated how strongly she wanted to see another boy from school. Glover argues that the letters show A.H. may have had relations with boys her own age and that to protect these boys, she fabricated Glover's involvement. The remainder and greater part of Glover's factual sufficiency argument centers on challenging the credibility of the witnesses who testified to Glover's various admissions.

■ Unless the record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor that the jury is better situated to make. *Johnson,* 23 S.W.3d at 8. The same holds true for uncontradicted witness testimony where the credibility of the evidence is challenged by cross-examination. In this case, several witnesses testified to Glover's admissions of sexual congress with A.H. Each witness was cross-examined. Although other people were also present when the admissions were made, Glover did not call them to either refute or explain the context of prior witnesses' testimonies regarding the admissions. Possible relationships between boys at school and A.H., even if established, would not negate her contact with Glover. The case rests primarily on the credibility of the State's witnesses, combined with the jury's understanding of what the phrases "screwed the s___t out of," "had sex with," and "slept with" meant.

A neutral view of all the evidence, both for and against the verdict, demonstrates the proof of guilt was not so obviously weak it undermined confidence in the jury's determination. The proof of guilt

was not greatly outweighed by contrary proof. The evidence was factually sufficient to support the conviction. Glover's second point of error is overruled.

In his third and fourth points of error, Glover complains of the admission of hearsay statements made by A.H. Over proper and timely objection of the defense, Diane was permitted to relate statements made by A.H. during a confrontation between the two. Glover contends that this testimony was hearsay, not within any exception, and that the trial court erred in admitting it.

Diane's testimony included the following: In May of 1999, A.H.'s parents were separated and living in different residences in Beaumont. At around one a.m. on May 15 (the early morning after Mother's Day), A.H. sneaked out of her father's house, and Glover picked her up. A.H.'s mother found out and called Glover to confirm he had picked A.H. up from her father's. Diane confronted A.H. that same evening. At the time, Diane only knew about the events from the same day. She told A.H., however, that she had already talked to Glover and that she "knew everything," but wanted to hear it from her daughter. A.H.'s emotional condition was described as uptight, emotional, then increasingly shaky. This charged emotional state was coupled with agitated behavior including crying and wringing of hands. Under the pressure of these circumstances, A.H. revealed the hearsay statements to which her mother testified and of which Glover complains.

Diane was permitted to testify to the out-of-court statements of A.H. The following exchange took place between the prosecutor and Diane:

Q. Was it your intention to confront [A.H.] regarding that situation [sneaking out of the house]?

A. Yes.

. . . .

Q. . . . How did you confront her?

A. Well, as soon as she came into the living room, I said, "We're going to talk about this. I've already talked to Troy. I know everything. You're going to get a whipping for sneaking out of your house." I said, "I've already talked to Troy [Glover]"; so, I didn't want any lies, I didn't want any shrugs of the shoulders, I didn't want to hear, "I don't know." . . . .

[I told her] "By the way, I've already heard. So, tell me the truth."

. . . .

Q. When you told her to tell you what was going on, what had happened, what was the first thing she told you?

MR. KIMLER [defense counsel]: Objection, Your Honor, it's hearsay, violation of right to confront and cross examine, as well as due process.

THE COURT: Overruled.

Q. (by Mr. Rodriguez) What was the first thing that she told you after you told her, "You better tell me the truth. I know everything that's happened"?

A. The very first thing she said is, "I snuck out of the house last night."

I said, "No, I want to know everything, [A.H.]."

(At this point, defense counsel requested and was granted a running objection to the testimony regarding hearsay statements of A.H.)

Q. What did she say then?

A. She said, "He picked me up last Sunday."

Q. Now, she said, "He picked me up last Sunday." At this point you're not talking about Mother's Day anymore, are you?

A. No.

Q. She's talking now about the previous Sunday.

A. Right.

....

Q. What was the next thing she told you?

A. She said, "He took me to his apartment, and we had sex."

Q. Did she describe anything about anything that happened leading up to having sex?

A. She said, "We danced, listened to music; and then we had sex."

And I said, "Where?"

She said, "On the floor."

....

Q. What was the next thing that you asked her?

A. I said, "Oh, my God, [A.H.]. Was it safe sex?"

She said, "Yes."

And I said, "So, what's safe sex?"

And she said, "Latex, Mom."

Q. Referring to a condom?

A. Yes.

....

Q. (By Mr. Rodriguez) On the day that you confronted [A.H.] when you found out what had actually happened, on that day what did she tell you was the truth about [a different] day she was supposedly late from school?

A. Troy [Glover] had picked her up from school after school, had taken her to his apartment and had sex again and brought her back home.

Q. Was it after this that you contacted the Beaumont Police Department?

A. Yes, sir.

At trial, the State had argued this testimony should be admitted under either Rule 804(b)(3), as a statement of personal family history, or under Rule 803(3), as a statement of then-existing mental condition.[4] *See* Tex.R. Evid. 803, 804. The trial court allowed all of the hearsay testimony. No requests for limited admissibility of this testimony were made, and no limiting instructions were given to the jury. On appeal, the State has correctly abandoned Rule 804(b)(3) as a basis for admission.

Rule 803(3) creates an exception to the hearsay rule for a "statement of the declarant's then existing state of mind ... but not including a statement of memory or belief to prove the fact remembered or believed...." Tex.R. Evid. 803(3). The State contends that the evidence related to A.H.'s emotional state during the confrontation with her mother as well as to her motivation for continuing acts of disobedience to her parents. These statements go well beyond A.H.'s then-existing emotional state during the confrontation with her mother. They offer a description of past facts. The only purpose of the statements in question was to prove Glover had sex with A.H. Evidence that seeks to establish a purported fact remembered and related in the utterance is specifically excluded from the state of mind exception. *Norton v. State,* 771 S.W.2d 160, 166 (Tex.App.-Texarkana 1989, pet. ref'd). To the extent the hearsay statement implicates the declarant's intent, plan, motive, and the like, the statement must relate to future conduct to be undertaken after the statement was made. *See Jones v. State,* 515 S.W.2d 126, 129 (Tex.Crim.App.1974) (holding hearsay inadmissible under state of mind exception because statement did not re-

---

4. A.H. was over age twelve, so the State could not offer her statements through an outcry witness under Tex.Code Crim. Proc. Ann. art. 38.072 (Vernon Supp.2002). Even if she been twelve or younger, A.H. was unavailable to testify, so the State would have been forced to find an alternative basis for admitting the hearsay statements.

flect intent or motive for future action, but only discussed preceding events). The testimony of Diane, relating statements made by her daughter and seeking to establish the truth of facts remembered regarding past events, is inadmissible under the state of mind exception to the hearsay rule. *See* TEX.R. EVID. 803(3).

The State also argues that the statements of A.H. were admissible as excited utterances. *See* TEX.R. EVID. 803(2). It is immaterial that this particular argument was not pressed at trial. If the trial court's decision is correct on any applicable theory of law, it will be sustained. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). This is especially true with regard to the admission of evidence. *Id.* The admission of evidence is reviewed only for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex.Crim. App.2001). The trial court's decision will be affirmed if it is within "the zone of reasonable disagreement." *Id.*

▉ An excited utterance is not excluded by the hearsay rule, regardless of the declarant's availability, and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R. EVID. 803(2). This exception has three requirements: (1) the statement must be a product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous and unreflecting, (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. *Sellers v. State*, 588 S.W.2d 915, 918 (Tex.Crim.App. [Panel Op.] 1979). The court need not examine each requirement independently, but should focus instead on whether their combined effect shows the statement to be sufficiently reliable. *Id.* In discussing the application of this exception, the Court of Criminal Appeals recently reiterated that

> It is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement.

*Salazar*, 38 S.W.3d at 154 (citations omitted) (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992)).

▉ The theory of the excited utterance exception is that circumstances may produce a condition of excitement that temporarily stills the capacity for reflection and produces utterances free of conscious fabrication. 2 GOODE, WELLBORN & SHARLOT, TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 803.3 (2nd ed.1993). The requirement the exclamation relate to the occurrence or its cause is not emphasized by the general theory of Rule 803(2). This type of hearsay is deemed reliable, and therefore admissible, to the extent it is the spontaneous, involuntary product of an excited state of mind. *See Parks v. State*, 843 S.W.2d 693, 697 (Tex.App.-Corpus Christi 1992, pet. ref'd). Spontaneity is the primary factor which makes these statements reliable. *De Leon v. State*, 500 S.W.2d 862, 867 (Tex.Crim. App.1973) (citing *Fisk v. State*, 432 S.W.2d 912, 915 (Tex.Crim.App.1968)). The fact that they relate to some occurrence other than the startling event itself or its cause should not make them less reliable. *See*

*Bondurant v. State,* 956 S.W.2d 762, 765 (Tex.App.-Fort Worth 1997, pet. ref'd).

The time elapsed between the crime and the utterance is also not a critical factor. The key is not whether there was an opportunity for reflection between the crime itself and the utterance in question. The critical element is the relationship between the utterance and the triggering event. A statement that is simply a narrative of past events or acts, as distinguished from a spontaneous utterance, does not qualify as an excited utterance no matter how soon after the event it is made. *First Southwest Lloyds Ins. Co. v. MacDowell,* 769 S.W.2d 954, 959 (Tex.App.-Texarkana 1989, writ denied). The only requirement concerning time is the necessity that the statement be made while in a state of excitement caused by the startling event. *City of Dallas v. Donovan,* 768 S.W.2d 905, 908 (Tex.App.-Dallas 1989, no writ). The circumstances must show that it was the event speaking through the person and not the person speaking about the event. *First Southwest,* 769 S.W.2d at 959.

The startling event that triggers the excited utterance need not be the crime itself, as long as the statement produced by the event is probative of an issue in the case. *See* TEX.R. EVID. 402 (stating all relevant evidence admissible); *see also Hunt v. State,* 904 S.W.2d 813, 815 (Tex. App.-Fort Worth 1995, pet. ref'd). In *Hunt,* an eleven-year-old girl was sexually assaulted by her father's friend. Three months later, she saw a television show about a young rape victim who had been stabbed by her attacker. *Id.* at 815. The girl began to cry uncontrollably. *Id.* When her mother questioned why she was crying, the girl told her mother about the sexual assault. *Id.* At trial, the victim testified that on seeing the news program, she had become fearful that she might be pregnant. *Id.* at 816. The victim's mother was also permitted to testify, over objection, to the contents of the conversation. *Id.* The court held that the shock of seeing the television news program triggered the victim's out-of-court statements, and her fear of pregnancy was startling enough to produce a state of nervous excitement so as to render her subsequent remarks spontaneous. *Id.* at 816–17.

There are similarities between *Hunt* and the present case, but the differences predominate. Here, A.H. revealed the existence of a statutory sexual assault under the stress induced by conditions completely independent of the alleged crime itself. The most obvious distinctions are the age of the declarant (fourteen versus eleven), and the fact that A.H. was unavailable to testify. The stressful event which triggers the statements is also distinguishable. A.H.'s stress was induced by her mother's questions in the context of a confrontation. The confrontation itself was intentionally stressful, calculated to elicit a confession from A.H. about sneaking out of her father's house. As indicated by Diane, A.H. was dominated by the emotions, excitement, and fear of disappointing her mother, combined with the threat of receiving a "whipping" for sneaking out. In *Hunt,* the declarant's stress arose spontaneously in response to an independent and otherwise nonstressful experience. The distinction here is not unlike the distinction between someone blurting out their complicity in a crime when asked why they are upset and someone breaking down and confessing to a crime under the pressure of interrogation. The former is spontaneous, the latter is not.

In this case, the question is whether the combined effect of the three *Sellers* factors suggest that A.H. was not likely to engage in conscious reflection or fabrication before answering her mother's questions. To answer this question, we

must examine the totality of the circumstances within which the statements were made. The reliability of an excited utterance must be determined by considering the overall effect of the three criteria as indicia of reliability. *See Sellers,* 588 S.W.2d at 918. A.H. does not respond in a spontaneous fashion, but responds directly to what she believes her mother was asking.[5] When she confronted A.H., Diane said she had already talked to Glover, so she knew everything, but wanted to hear it from A.H. When A.H. started to talk about the previous night, Diane stopped her and said, "No, I'm talking everything." According to the testimony, it is at this point that A.H. began to talk about the sexual encounter from the prior week. Diane was surprised by this revelation, for she had not been aware of the prior encounter. The State argues the mother's surprise at this point shows the responses of A.H. are spontaneous. The fact that her mother was referring to the previous night, and was surprised by what A.H. said about the previous week, is irrelevant. The spontaneity of the statements cannot be measured by the expectations of the *listener;* only the speaker's perspective is important in determining spontaneity.

In this case, Diane's questions were calculated to elicit information about past events and activities, even if the specific data elicited was unanticipated. Responses to this type of questioning are not spontaneous. Responses to this type of questioning are normally considered reflective narratives of past events. This is the qualitative difference between the circumstances in this case compared to those in *Hunt.* There, the questions were general-

ized, meant to ascertain how the girl was feeling and why she was crying. Here, Diane's questions were specifically intended to elicit details of past events of which the questioner was presumed to be already aware. In *Hunt,* the younger child's age of eleven makes her less likely to consider the consequences of her answers. The child in *Hunt* was also not placed under any threat of punishment. Here, the older A.H. has already been placed under a disciplinary threat, making her much more likely to consider the consequences of her answers before making them. Unlike *Hunt,* the circumstances in this case suggest reflective consideration and allow an opportunity for conscious fabrication.

The statements of A.H. comprise a reflective, narrative account of past events. They were made in response to direct, specific questions that were calculated to elicit the type of responses given, even though the contents of the responses were unanticipated. A statement that is simply a narrative of past acts or events is distinct from an excited utterance and does not qualify under Rule 803(2) regardless of how soon after the event it is made. *First Southwest,* 769 S.W.2d at 959 (citing *Gulf, C. & S.F.R. Co. v. Moore,* 69 Tex. 157, 6 S.W. 631 (1887)). A.H. may have been upset, but that does not make her statements excited utterances. Her age and the threat of punishment make the statements more likely to be reflective and premeditated. The danger of allowing expansion of the excited-utterance exception to include this type of information is that it will become as broad and indeterminate as the former *res gestae* exception.[6]

---

5. This is distinct from *Hunt v. State,* 904 S.W.2d 813, 815 (Tex.App.-Fort Worth 1995, pet. ref'd), where the question was generalized and did not anticipate any particular response.

6. See notes 2 through 5 and accompanying text in 2 GOODE, WELLBORN & SHARLOT, TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 803.3 (2nd ed.1993), for criticism of the nebulous *res gestae* formulation.

The statements of A.H. do not fall within the excited-utterance exception to the hearsay rule. We cannot say the statements in issue were spontaneous and unreflecting, or made without the opportunity to contrive or misrepresent. *See Sellers,* 588 S.W.2d at 918. This conclusion is not within the zone of reasonable disagreement.

■■■ The State also contends that the statements of A.H. are admissible as statements against "social" interest. *See* Tex.R. Evid. 803(24); *Robinson v. Harkins & Co.,* 711 S.W.2d 619, 621 (Tex.1986). The rule applies to a statement which, at the time made, so far tends "to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true." Tex.R. Evid. 803(24). Whether a statement is in fact against the interest of the declarant must be determined from the circumstances of each case. *Cofield v. State,* 891 S.W.2d 952, 956 (Tex.Crim.App. 1994) (discussing statement against penal interest). To be admitted on the basis it would subject the declarant to disgrace, the statement must be "in the context of the declarant's social interests," and must be against such interests at the time it was made. *Burks v. State,* 40 S.W.3d 698, 701 (Tex.App.-Waco 2001, pet. ref'd) (citing *Owens v. State,* 916 S.W.2d 713, 718 (Tex. App.-Waco 1996, no pet.); *Bell v. State,* 877 S.W.2d 21, 24 n. 2 (Tex.App.-Dallas 1994, pet. ref'd)).

■■ The statements of A.H. contain a confession of sexual relations between a fourteen-year-old girl and a twenty-six-year old man. Examining the circumstances, a reasonable person in A.H.'s position would have known that her statements would subject her to disgrace in the eyes of her mother. That A.H. recognized and understood this is illustrated by the fact that she took pains to hide her conduct from her parents by sneaking out of her father's house and by keeping her liaison a secret. She made the statements reluctantly, and only when confronted by the possibility that her mother already knew the "secret." The audience was A.H.'s mother. A.H. was fourteen and still lived with her mother, so A.H. was still subject to her mother's authority and control. The risk to A.H. of being untruthful was that certain punishment would be compounded, because she was told that her mother already "knew everything." Considering all of the circumstances, we conclude that the statements of which Glover complains fall within the scope of Rule 803(24), in that they would so far tend to subject the declarant to disgrace that a reasonable person in her position would not have made these statements unless believing them to be true. Tex.R. Evid. 803(24).

We cannot say that the admission of this evidence was error amounting to an abuse of discretion. *See Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001). Glover's third and fourth points of error are overruled.

In his fifth point of error, Glover argues the trial court erred in admitting the out-of-court statements of A.H. in violation of Glover's right to confront witnesses under the United States and Texas Constitutions.

■■■ The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him." U.S. Const. amend. VI. Admission of hearsay evidence against a criminal defendant implicates the Confrontation Clause of the Sixth Amendment because the defendant is denied the opportunity to confront the out-of-court declarant. U.S. Const. amend. VI.; *Guidry v. State,* 9

S.W.3d 133, 149 (Tex.Crim.App.1999), *cert. denied,* 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (citing *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). In considering this constitutional issue, the decision of the trial court is reviewed de novo. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997). Not all hearsay violates the Confrontation Clause. A hearsay statement is per se reliable for Confrontation Clause purposes if it falls within a firmly rooted exception to the hearsay rule. *Guidry,* 9 S.W.3d at 149–50 (citing *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). Admission of evidence under a firmly rooted hearsay exception satisfies the constitutional requirement of reliability because of the weight of longstanding judicial and legislative experience in assessing trustworthiness of certain types of out-of-court statements. *Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

The hearsay exception for a statement against social interest, a statement that tends to subject the declarant to hatred, ridicule, or disgrace, is not a firmly rooted hearsay exception. Rule 803(24) was promulgated in 1985, and became effective September 1, 1986.[7] Before that date, Texas law did not recognize an exception for a declaration against social interest. *See* 2 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 803.29 (2d ed. 1993 & Supp.2001); *see also* David A. Furlow and Lisa H. Pennington, *Determining What Types of Hearsay Disparage A Declar-*

*ant's "Social Interest": An Innovation for Texas Evidence Law,* 48 TEX. B.J. 1058, 1062 (1985). Since the rule was adopted, only a handful of Texas appellate courts have considered evidence admitted pursuant to this exception. An exception for declarations against social interest has not existed long enough in Texas, nor is there any significant judicial or legislative experience in assessing the trustworthiness of statements admitted under it, for such declarations to be considered per se reliable for Confrontation Clause purposes.

■■■ Although the evidence in this case does not fall within a firmly rooted exception to the hearsay rule, it may nonetheless be sufficiently reliable for Confrontation Clause purposes if it has "particularized guarantees of trustworthiness." *Guidry,* 9 S.W.3d at 149 (citing *Wright,* 497 U.S. at 816, 110 S.Ct. 3139; *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). The central concern of the Confrontation Clause is to ensure the reliability of evidence against a defendant by subjecting it to rigorous testing in an adversarial proceeding before the trier of fact. *Lilly v. Virginia,* 527 U.S. 116, 124–25, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). Some statements that do not fit into a firmly rooted hearsay exception may have other particularized guarantees of trustworthiness that serve as a proxy for cross-examination, allowing the statements to be admitted without offending the confrontation rights guaranteed to a criminal defendant.

---

7. Although a similar formulation was proposed by the U.S. Supreme Court, Congress deleted the social interest language from the equivalent Federal Rule of Evidence 804(b)(3). *See* H.R. REP. No. 93–650 at 7089 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7089. Federal law still recognizes no hearsay exception for statements against social inter-est. Several states, including California, have recognized a social interest exception. *See, e.g.,* CAL. EVID.CODE § 1230 (2001); WIS. STAT. § 908.045(4) (2001). Other states have considered and rejected the social interest exception. *See, e.g., Heddings v. Steele,* 514 Pa. 569, 526 A.2d 349, 352–53 (1987).

The trustworthiness of hearsay evidence must be evaluated in light of the totality of the circumstances, considering only those circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. *Guidry*, 9 S.W.3d at 150. Other evidence admitted at trial cannot be considered in determining trustworthiness. *Id.* The trustworthiness requirement is satisfied if cross-examination would be of only "marginal utility." *Muttoni v. State*, 25 S.W.3d 300, 307 (Tex.App.-Austin 2000, no pet.) (citing *Lilly*, 527 U.S. at 134, 119 S.Ct. 1887). Other evidence admitted at trial cannot be used to corroborate the veracity of the hearsay or to support a claim that the statement bears the requisite guarantees of trustworthiness. *Muttoni*, 25 S.W.3d at 307(citing *Lilly*, 527 U.S. at 135, 119 S.Ct. 1887 (holding the State may not bootstrap on the trustworthiness of other evidence)). As the court in *Guidry* stated, "[T]here must be 'an affirmative reason arising from the circumstances in which the statement was made' which provides a basis for rebutting the presumption that a hearsay statement is not reliable." *Guidry*, 9 S.W.3d at 150 (quoting *Wright*, 497 U.S. at 819, 110 S.Ct. 3139).

In this case, the same factors that bring the statements within the hearsay exception also guarantee reliability under the Confrontation Clause. As shown above, the conditions under which the statements were made and the person to whom they were made provide a basis for rebutting the presumption of unreliability. A.H.'s affirmative conduct in trying to conceal her sexual relationship with Glover acknowledged that she knew her statements would subject her to disgrace in the eyes of her mother. This provides a basis for the jury to assess the credibility of her statements. The defense was also able to test the evidence by offering an alternative explanation for the statements.

Glover's fifth point of error is overruled.

The judgment of the trial court is hereby affirmed.