Affirmed and Memorandum Opinion filed July 31, 2007








Affirmed and Memorandum Opinion filed July 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00159-CR

_______________

 

CHARLES JAMES FARMER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

                                                                                                                                               


On Appeal from the 262nd District Court

 Harris County, Texas

Trial Court Cause No. 1028994

                                                                                                                                                

 

M E M O R
A N D U M   O P I N I O N

A jury
found appellant, Charles James Farmer, guilty of aggravated sexual assault and
assessed punishment at confinement for life.   In his sole issue, appellant
contends the trial court erred by allowing witnesses to testify regarding the
complainant=s out-of-court statements under the excitedButterance exception to the hearsay
rule.  Our disposition is based on clearly settled law.  Accordingly, we issue
this memorandum opinion and affirm.  See Tex. R. App. P. 47.4.  








I.  Background 

Appellant
was accused of aggravated sexual assault of T.W. who was twenty years-old at
the time of the offense.  T.W. lived in an apartment with her mother. 
Appellant lived with his girlfriend in the apartment below.  At trial, T.W.
testified as follows.  During late May 2005, appellant asked T.W. to accompany
him to Wal-Mart and advise regarding a gift for his girlfriend.  During the
trip, appellant asked T.W. if she had a boyfriend and if she was a virgin. 
Appellant expressed surprise when T.W. informed him that she was a virgin.  

On May
31, 2005, appellant came to T.W.=s apartment door and asked to borrow
some aluminum foil. While she was retrieving the foil, appellant entered the
apartment without her permission.  He asked T.W. when her mother would return
home.  Appellant then  left T.W.=s apartment without the foil but
returned approximately fifteen minutes later.  He again asked for foil and
entered the apartment without T.W.=s permission.  He told T.W. that he
had ended his relationship with his girlfriend.  T.W. continued packing for an
impending move, hoping Ait would give him the message that [she] was busy.@  She wrapped an ornamental dagger in
cloth and placed it in a box.  When T.W. went into the bedroom, appellant
approached her from behind with the dagger in one hand and grabbed her around
the neck with his other hand.  Appellant pushed T.W. onto the desk and then the
bed.  Appellant inserted his penis in her mouth, anus, and vagina.  Appellant
stopped when T.W. told him  her mother would be home soon. 








After
appellant left the apartment, T.W. called her brother-in-law, Gerald Bierbaum,
and told him she had been raped.  Bierbaum called the police while he was
driving toward T.W.=s apartment.  Upon his arrival, Bierbaum took T.W. from her
apartment to a nearby convenience store where he flagged down Officer Reginald
Porter, who was responding to the call.  Porter spoke with T.W. concerning the
details of the incident while she was inside an ambulance.  Officer Rhonda
Pemberton was also dispatched and arrived shortly after Porter.  Pemberton
joined Porter and T.W. in the ambulance.  T.W. gave Porter and Pemberton a
description of the assailant and told them where he lived.  Pemberton found
appellant at his apartment and brought him to the convenience store where he
was positively identified by T.W.  At trial,  Prior to T.W.=s testimony, the State called Porter,
Pemberton, and Bierbaum who testified regarding their conversations with T.W. 
The jury found appellant guilty of aggravated sexual assault.  

II. Standard of Review

In his
sole issue, appellant contends the trial court erred by allowing Porter,
Pemberton, and Bierbaum to testify regarding of T.W.=s statements under the
excited-utterance exception to the hearsay rule.  A trial court has broad
discretion in determining whether evidence is admissible as an exception to the
hearsay-exclusionary rule.  See Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003).  The decision to admit or exclude hearsay will not be
reversed unless the trial court committed an abuse of discretion.  See id.  An
abuse of discretion occurs when  the trial court=s  decision to admit evidence lies
outside the zone of reasonable disagreement.  See Salazar v. State, 38
S.W.3d 141, 153B54 (Tex. Crim. App. 2001). 

III.  Analysis








Statements
made by an out-of-court declarant are generally not admissible unless they fall
within a recognized exception to the hearsay rule.  See Tex. R. Evid. 801, 802; Apolinar v.
State, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).  An excited utterance is
A[a] statement relating to a startling
event or condition made while the declarant was under the stress of excitement
caused by the event or condition.@  See Tex. R. Evid. 803(2);  Apolinar, 155 S.W.3d at 186. 
An excited utterance is an exception to the hearsay rule, even though the
declarant is available as a witness.  See Tex. R. Evid. 803(2);  Apolinar, 155 S.W.3d at 186.
The exception is based on the assumption that the declarant is not, at the time
of the statement, capable of the kind of reflection that would enable her to
fabricate information.  See Apolinar, 155 S.W.3d at 186; Zuliani,
97 S.W.3d at 595.  

The
critical question is whether the declarant was still dominated by the emotion,
excitement, fear, or pain of the event when she made the statements.  See
Apolinar, 155 S.W.3d at 186B87; Zuliani, 97 S.W.3d at 596.  Factors a trial court
may also consider include the time elapsed and whether the statements were
responses to questions. See Zuliani, 97 S.W.3d at 596.  However,
timing of the statements and whether the declarant is responding to questions
should be considered with other evidence. See id.  

 Specifically,
in this case, appellant argues the statements were not excited utterances (1)
because of the amount of time that elapsed between the incident and T.W.=s encounter with the officers; (2)
T.W. was not dominated by the emotion, excitement, fear, or pain of the event
when she made the statements; and (3) her statements were responsive to
questions.

A.        Statements to Officer Reginald Porter

Officer
Porter was the first witness called by the State.  He testified that he was
patrolling on May 30, 2005 when he received a dispatch to investigate a sexual
assault.  On the way to T.W.=s apartment, Gerald Bierbaum, T.W.=s brother-in-law, motioned for Porter=s attention at a convenience store
near the apartment.  Porter drove into the convenience store parking lot.  T.W.
was with Bierbaum.  Porter spoke with T.W. while she was inside an ambulance. 
Appellant complains that the court allowed Porter=s testimony regarding that
conversation.

We first
note that appellant did not object to all the questions concerning T.W.=s statements to Officer Porter.  The
record reflects the following:

Q. [State]:
What did she tell you [about what happened]?

[Appellant=s counsel]: Objection.  That=s hearsay, your Honor? 

The Court: Overruled.








Q. [State]:
What did she tell you? 

A.
[Porter]: She told me she was raped by the man [that] lived in the apartment
beneath her. 

Q. 
[State]: Did she say anything else about the rapes in particular?  

A. 
[Porter]: Yes, ma=am.  She told me that he used an ornamental dagger. 
In fact, she was pretty descriptive about the dagger that he used.  He held it
to her throat after forcing his way inside the apartment door. 

Q. 
[State]: How did she say he got in? 

A.  She
said that he came to the door, knocked on it, and asked to borrow some aluminum
foil and she closed the door but not completely to go retrieve the foil.  And
while she was in the kitchen, he came into the apartment and picked up the
dagger and made his approach to her.  

Q. 
[State]: Okay. Did she tell you exactly what he did to her once he had the
dagger at her throat?  

A. 
[Porter]: Yes.  

Q. 
[State]: What did [s]he tell you? 

[Appellant=s counsel]: Object to this entire series of questions,
your Honor.  May I have a running objection to hearsay?  

The Court: You may have a running objection.  

[Appellant=s counsel]: Thank you. 

 

After
appellant received a running objection, Porter testified that T.W. told him
appellant placed the dagger to her throat and forced her to perform oral and
vaginal sex.  T.W. also said she was very frightened because appellant told her
he was a member of the Aryan Nation and someone could harm her even if he were
in jail.  In addition, T.W. described appellant=s clothing and underwear.   








Appellant
did not object to the following questions: (1) ADid she say anything else about the
rapes in particular?@ (2) AHow did she say he got in?@ and (3) ADid she tell you exactly what he did
to her once he had the dagger at her throat?@  Consequently, appellant waived any
error regarding Porter=s responses to these questions and only preserved error
regarding his answer to the question AWhat did she tell you?@ and Porter=s testimony after appellant received
a running hearsay objection. 

Appellant
contends that T.W.=s statements to Porter were not excited utterances because
T.W. had Aclearly composed herself@ and Aa significant period of time [had] passed.@[1]  To the contrary, Porter gave the
following testimony regarding their initial conversation: A[T.W.] was very excited, very
nervous, almost to the point where her nervousness made me nervous.  She was
just really excited.@  This testimony supports a finding that T.W. was still
dominated by the physical pain and emotional shock.  See Zuliani, 97
S.W.3d at 596; Ross v. State, 154 S.W.3d 804, 811 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (finding testimony that the
declarant was Aexcited, nervous, and scared@ and A>didn=t know what to do=@ was sufficient to support a finding
that he was still dominated by the emotions of the startling event). 
Furthermore, if the statement is made while the declarant is still in the grip
of emotion, excitement, fear, or pain and it pertains to the exciting event, it
is admissible even after an appreciable amount of time has elapsed.  See
Penry v. State, 691 S.W.2d 636, 647 (Tex. Crim. App. 1985); Ross,
154 S.W.3d at 810.  








Further,
at this point in the trial, the court had heard testimony that Porter was
dispatched in response to a sexual assault call, met T.W. and her
brother-in-law at a convenience store while responding to the call, spoke
immediately with T.W., and thought that the sexual assault was Afairly recent.@  The testimony concerning the amount
of time that elapsed was not precise.  However, based on the testimony at that
point, the trial court could have reasonably concluded the sexual assault
occurred within the past few hours.[2]  Considering
the amount of time that elapsed between the attack and T.W.=s statements, we conclude that this
factor supports admission of T.W.=s statements as excited utterances.  Ross,
154 S.W.3d at 811 (holding statements given Aa few hours@ after startling event were excited
utterances); Short v. State, 658 S.W.2d 250, 255 (Tex. App.CHouston [1st Dist.] 1983), aff=d, 671 S.W.2d 888 (Tex. Crim. App. 1984) (holding
four-and-one-half hours was not too long a period between exciting event and a
statement made by a child in extreme pain and regarding the cause of his
injury).  Regardless, the amount of time that elapsed is only a factor to be
considered and is not dispositive.  Zuliani, 97 S.W.3d at 596 (holding
statements qualified as excited utterances where declarant was scared and
tired, and her statements were in response to questions twenty hours after the
event). 

Appellant
also contends T.W.=s statements were not excited utterances because they were
responsive to Porter=s questions.  He cites two cases in support of his contention
that T.W.=s responses lack spontaneity to qualify as excited utterances.  See
Hughes v. State, 128 S.W.3d 247, 253 (Tex. App.CTyler 2003, pet. ref=d);  Glover v. State, 102
S.W.3d 754, 765 (Tex. App.CTexarkana 2002, pet. ref=d).  However, these cases are distinguishable. 
In Hughes, the statements were made during interviews at a police
station that lasted four to six hours.  12 S.W.3d at 253.  In Glover,
the statements were the complainant=s responses to questions by her mother
after the mother was informed that someone had engaged in improper sexual
contact with the complainant.  102 S.W.3d at 764.  The court found that the
statements lacked sufficient spontaneity because the questions were
specifically intended to elicit details of past events.  Id. at 765.  








            In contrast,
the evidence reflects that Porter was the first officer to speak with T.W.
after the incident.  He first spoke with her after she had been placed in an
ambulance.  The interview was not lengthy or conducted at a police station, as
in Hughes.  Moreover, when Porter arrived, he knew only that he was
responding to a sexual assault call.  He had no knowledge of details. 
Therefore, he was not equipped to ask calculated questions.  For these reasons,
the trial court=s decision that T.W.=s statements qualified as excited
utterances was within the zone of reasonable disagreement.  Accordingly, we
hold the trial court did not abuse its discretion by admitting Porter=s testimony.    

B.        Statements to Officer
Rhonda Pemberton 

Officer
Pemberton was the second witness called by the State.  She and her partner
joined Officer Porter at the convenience store.  She was present during part of
Porter=s conversation with T.W.   Pemberton=s testimony regarding  T.W.=s description of the man who
assaulted her  was admitted as an excited utterance.  Specifically, Pemberton
testified that T.W. described the suspect as a white male who had tattoos and
short hair.  She also testified that T.W. said she believed he lived in
apartment 195, which was below her apartment.  

Appellant
contends Pemberton did not give Aany useful information@ regarding the time between the
offense and T.W.=s statements.  However, Pemberton testified that she believed
the sexual assault Ahad just occurred.@  At this point in the trial, the
judge had already heard Porter=s testimony concerning the time between the sexual assault
and the statements as previously discussed and testimony about T.W.=s demeanor.  Furthermore, Pemberton
testified that when she arrived, T.W. appeared to be Aupset because of the sexual assault.@  Finally, as we have already
explained, time is a factor to be considered by the court; however, it is not
dispositive.  Zuliani, 97 S.W.3d at 596.  Accordingly, the trial court
acted within its discretion by concluding that T.W. was still under the
physical and emotional stress of the excitement caused by the event or
condition when she made the statements described by Pemberton.  

 








C.        Statements to Gerald
Bierbaum                                     

Gerald
Bierbaum was the third witness called by the State.  He testified that T.W.
called him immediately after the sexual assault.  She told him that she had
been raped and said, ACome get me.  Come get me right now.  He=s still here.  He=s still here.  He=s right here.@  

Appellant
contends T.W.=s statements were not excited utterances because Bierbaum testified T.W.=s demeanor was Aabsolutely flat, no emotion.@  However, appellant does not refer
to the entirety of Bierbaum=s testimony.  Bierbaum testified that he had known T.W. since
she was five years-old and that he Ahad never heard her like that@ when she called him.  Her voice was Aabsolutely flat, just absolutely no
emotion.@  He explained that she was Abeyond upset.@  She was Ajust absolutely flat and in shock@ about what had just happened. 
Accordingly, the trial court did not abuse its discretion in admitting Bierbaum=s testimony regarding T.W.=s statements because she was still
dominated by the emotions, excitement, fear, or pain of the event.[3]


D.        Confrontation Clause                          








In a
sub-issue, appellant also contends his Sixth Amendment right to confront and
cross-examine witnesses was violated when the trial court allowed Porter,
Pemberton, and Bierbaum to testify regarding T.W.=s statements. See U.S. Const. amend. VI.  However, at
trial, appellant failed to object on the ground that admission of the
statements constituted a denial of  his right to confront and cross-examine
witnesses.[4]  Appellant=s objection was based solely on
hearsay grounds.  By failing to object on confrontation clause grounds,
appellant failed to preserve this argument for review.  See Tex. R. App. Proc. 33.1(a); Bunton
v. State, 136 S.W.3d 355, 369 (Tex. App.CAustin 2004, pet. ref=d)).  

Appellant=s sole issue is overruled, and the
judgment of the trial court is affirmed.

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Memorandum Opinion filed July 31, 2007.

Panel consists of Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 

 

 

 

 









[1]  In his brief, appellant does not specify which
statements he contends were improperly admitted.  However, he apparently
complains of Porter=s entire testimony regarding T.W.=s statements.  





[2]  We note that medical and fire department records
later admitted during the trial indicate that Porter, Pemberton, and Bierbaum
all spoke with T.W. within an hour after the incident. However, an appellate
court reviews a trial court=s ruling on
admission of evidence in light of the arguments, information, and evidence that
were available at the time it ruled.  Dragoo v. State,
96 S.W.3d 308, 313 (Tex. Crim. App. 2003);  Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002).  Therefore, we do not consider these records in our
analysis. 





[3]  Appellant contends the testimony of Officer Porter
and Bierbaum regarding T.W.=s statements
bolstered T.W.=s later testimony.  It is unclear whether appellant
raises this contention as a separate point of error or whether the claimed
bolstering pertains to harmfulness of the alleged error.  If appellant is
raising a separate point of error, he cites no supportive authority.  If the
argument pertains to harmfulness, we do not employ a harm analysis because we
have concluded that the trial court did not err by admitting the testimony.





[4]  We also note appellant had the opportunity to
cross-examine T.W.