In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00026-CR
______________________________


JOHNIFER RAY MUMPHREY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 2003-4308


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Johnifer Ray Mumphrey was convicted by a jury for an assault causing bodily injury
on Theresa Reedy, a member of his family or household. See Tex. Pen. Code Ann.
§ 22.01 (Vernon Supp. 2004–2005), § 12.21 (Vernon 2003). The trial court assessed
punishment at 270 days' confinement in jail and sentenced him accordingly. On appeal,
Mumphrey contends the trial court erred with respect to several of its evidentiary rulings
and in overruling his objection to the State's jury argument. He also contends defense
counsel rendered ineffective assistance. We overrule these contentions and affirm the
judgment.
I.        EVIDENTIARY RULINGS
          The State presented two witnesses: Sheriff's Deputy Craig Strickhausen, the
responding officer, and Reedy. Mumphrey presented his sole witness, Cheryl Morgan, with
whom Mumphrey and Reedy lived at the time of the offense. Morgan's testimony focused
on the fact she rarely saw Reedy take her medication for her mental disorders. 
A.       Expert Testimony by Deputy
          In his first point of error, Mumphrey contends the trial court erred in overruling his
objection to Strickhausen's opinion testimony that Reedy had been assaulted. The trial
court's ruling, he argues, ran afoul of Tex. R. Evid. 702 by improperly allowing the deputy
to give expert opinion testimony.
          1.       Standard of Review
          We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002);
Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996).
2.Testimony at Issue
          Mumphrey's contention centers on the following exchange between the State's
attorney and Strickhausen:
[STATE].After talking to Ms. Reedy and Ms. Jackson, did it further
your professional opinion as a deputy that an assault had taken place?
 
                                [DEFENSE].I object, Your Honor. Bolstering.
 
THE COURT.Overruled.
 
[WITNESS].Yes, ma'am. I believed that she had been assaulted.
 
3.Error Was Not Preserved by Bolstering Objection
          Mumphrey's objection to this testimony raised only the issue of bolstering. 
Bolstering occurs when one party introduces evidence for the purpose of adding credence
or weight to earlier unimpeached evidence offered by that same party. Rousseau v. State,
855 S.W.2d 666, 681 (Tex. Crim. App. 1993); Woods v. State, 13 S.W.3d 100, 102 (Tex.
App.—Texarkana 2000, pet. ref'd). More precisely, "bolstering" is any evidence the sole
purpose of which is to convince the fact-finder that a particular witness or source of
evidence is worthy of credit, without substantively contributing "to make the existence of
[a] fact that is of consequence to the determination of the action more or less probable
than it would be without the evidence." Cohn v. State, 849 S.W.2d 817, 819–20 (Tex.
Crim. App. 1993); Woods, 13 S.W.3d at 102. Accordingly, evidence that corroborates
another witness' story or enhances inferences to be drawn from another source of
evidence, in the sense that it has an incrementally further tendency to establish a fact of
consequence, should not be considered "bolstering." Cohn, 849 S.W.2d at 820. 
          In order to preserve error for our review, the record must show compliance with Rule
33.1 of the Rules of Appellate Procedure:
(1)the complaint was made to the trial court by a timely request,
objection, or motion that:
 
(A)stated the grounds for the ruling that the complaining
party sought from the trial court with sufficient specificity to make the
trial court aware of the complaint, unless the specific grounds were
apparent from the context; and
 
(B)complied with the requirements of the Texas Rules of
Civil or Criminal Evidence or the Texas Rules of Civil or Appellate
Procedure; and
 
(2)the trial court:
 
(A)ruled on the request, objection, or motion, either
expressly or implicitly; or
 
(B)refused to rule on the request, objection, or motion, and
the complaining party objected to the refusal.

Tex. R. App. P. 33.1.
          Mumphrey complains the trial court improperly admitted Strickhausen's expert
testimony in violation of Texas Rule of Evidence 702. The issue raised on appeal does not
concern the issue of bolstering raised at trial. Because Mumphrey's trial objection does
not comport with the issue raised on appeal, he has preserved nothing for review. See
Ibarra v. State, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999).
B.       Admission of Hearsay
          In his second point of error, Mumphrey complains about the admission into evidence
of: a) Strickhausen's testimony regarding statements Reedy made to him at the scene;
and b) videotaped statements by Reedy recorded within an hour of the assault. 
          1.       Standard of Review
          The admissibility of an out-of-court statement under a hearsay exception is within
the trial court's discretion, subject to review only for abuse of discretion. King v. State, 953
S.W.2d 266, 269 n.4 (Tex. Crim. App. 1997); Lawton v. State, 913 S.W.2d 542, 553 (Tex.
Crim. App. 1995).
          2.       Evidence at Issue
          The trial court admitted, over defense counsel's objection, Strickhausen's testimony
regarding statements by Reedy made at the scene of the alleged assault. Specifically,
Mumphrey complains of the following exchanges:
[STATE].And what did Ms. Reedy tell you about what happened
that night?
 
[DEFENSE].Objection. Hearsay, Your Honor.
 
THE COURT.Under the excited utterance rule as an
exception, I'll allow the testimony.
 
. . . .
 
[WITNESS].I asked Ms. Reedy what happened, and she stated that
she had been assaulted. I asked who assaulted her, and she said Johnifer
Ray Mumphrey.
 
[STATE].Did she tell you in what manner she had been
assaulted?
 
. . . .
 
[DEFENSE].Same objection, Your Honor.
 
THE COURT.I'll give you a running objection on the
statements that I've ruled are excited utterances and are thereby an
exception to the hearsay rule.
Proceed.
 
[WITNESS].I asked her how he assaulted her. She stated that he
came over to the residence asking for some money. She would not give him
any money, and he approached her. She went down the hallway and shut
a bedroom door -- went into a bedroom and shut the door and leaned
against it. He forced himself into the bedroom and began assaulting her.
 
[STATE].. . . Did she tell you what he did to assault her
specifically?
 
[WITNESS].Yes, ma'am. She said that he hit her in the face, struck
her in the face and in the back and neck area.

Strickhausen recorded a videotape that morning in which Reedy answered similar
questions. Over defense counsel's hearsay objection, the trial court admitted the
videotape. 
3.       Excited Utterance Exception to Rule Against Hearsay
          Because Reedy's statements are out-of-court statements made to prove the truth
of the matter asserted, testimony regarding these statements is hearsay. See Tex. R. Evid.
801(d). We must look to the Rules of Evidence to see if there is an applicable exception
to the rule excluding hearsay.


 Tex. R. Evid. 802.
          The trial court ruled that Reedy's statements to police qualified as excited
utterances, an exception to the rule excluding hearsay. An excited utterance is "[a]
statement relating to a startling event or condition made while the declarant was under the
stress of excitement caused by the event or condition." Tex. R. Evid. 803(2); Glover v.
State, 102 S.W.3d 754, 763 (Tex. App.—Texarkana 2002, pet. ref'd).
          For the excited utterance exception to apply, three conditions must be met: (1) the
statement must be a product of a startling occurrence that produces a state of nervous
excitement in the declarant and renders the utterance spontaneous and unreflecting,
(2) the state of excitement must still so dominate the declarant's mind that there is no time
or opportunity to contrive or misrepresent, and (3) the statement must relate to the
circumstances of the occurrence preceding it. Sellers v. State, 588 S.W.2d 915, 918 (Tex.
Crim. App. [Panel Op.] 1979); Glover, 102 S.W.3d at 763. Each element need not be
neatly drawn out and satisfied. However, the cumulative effect of the three elements must
indicate that the statement is sufficiently reliable as to warrant exception to the hearsay
rule. See Sellers, 588 S.W.2d at 918; Glover, 102 S.W.3d at 763.
          Mumphrey does not challenge the first or third considerations. Rather, his point of
error involves only the second consideration of the excited utterance exception, that the
declarant still be dominated by the emotion or stress of the event. 
          The excited utterance exception is based on the theory that a spontaneous
statement made in response to a startling event is more reliable and, therefore, falls
outside the purpose of the hearsay exclusion. See Couchman v. State, 3 S.W.3d 155, 159
(Tex. App.—Fort Worth 1999, pet. ref'd). An excited utterance is made without adequate
time to fabricate or reflect on the event. See id. The record must show the declarant was
excited or emotionally stimulated or in the grip of a shocking event so as to render the
statement a spontaneous utterance. Salazar v. State, 38 S.W.3d 141, 154 (Tex. Crim.
App. 2001).
          Spontaneity is the primary factor which makes an excited utterance reliable. Glover,
102 S.W.3d at 763. When a court determines whether the statement meets the requisite
spontaneity element, no single, rigid principle governs. Snellen v. State, 923 S.W.2d 238,
243 (Tex. App.—Texarkana 1996, pet. ref'd). The court will consider each case on its own
particular facts. Fisk v. State, 432 S.W.2d 912, 914 (Tex. Crim. App. 1968).
          A court will consider the amount of time that has elapsed since the event. Salazar,
38 S.W.3d at 154. It will also consider whether the statement at issue was made in
response to questioning by another. Id. Neither factor, however, is dispositive of the issue. 
Id. The pivotal consideration becomes whether the declarant was still dominated by
emotions, excitement, fear, or pain of the event. Zuliani v. State, 97 S.W.3d 589, 596 (Tex.
Crim. App. 2003). If the record supports such a conclusion, the spontaneous statement
may be admissible even after an appreciable amount of time has elapsed since the
startling event. See id. (statements admissible when victim of assault made statement
twenty hours later but had not been separated from her aggressor since assault); Snellen,
923 S.W.2d at 243 (statements admissible when victim of sexual abuse made statement
thirteen or fourteen hours after event had occurred).
          4.       Statements at Scene Qualified as Excited Utterances and, Thus, Were
Admissible

          The assault occurred in the early morning hours of May 29, 2003, while Reedy and
Mumphrey were at the home of his sister, Linda Jackson. Reedy testified Mumphrey
struck her several times and chased her through the house because she had refused to
give him money. She ran from him and called 9-1-1 from a locked bathroom as Mumphrey
pounded on the door. Mumphrey left before police arrived. 
          Although Reedy could not specify the length of time that passed between her call
to 9-1-1 and the arrival of the police, she did say that "[i]t didn't take long" for the officer to
arrive. Strickhausen testified that he received a call from dispatch at 5:09 a.m. and that
it took him fifteen to twenty minutes to arrive at the scene. On his arrival at the scene,
Strickhausen spoke with a "very emotional" Reedy, who appeared "very shaken up, very
scared, crying." 
          Strickhausen began recording the videotape at 5:40 a.m., only thirty-one minutes
after dispatch and before he left the scene of the assault on the morning of May 29. He
testified the videotape was taken within one hour of the assault. On the videotape, Reedy
is visibly distraught. She rocked back and forth, and spoke in a very shaken voice. She
cried throughout the videotape, and hiccoughs accompanied her crying. Blood from her
lip injury was visible on her shirt. 
          Even though many of the statements were made in response to Strickhausen's
questions, Reedy appears to still be acting under the stress of the assault, as evidenced
by her mannerisms, voice, demeanor, and appearance, to which Strickhausen testified and
which are apparent on the videotape. The trial court acted well within its discretion when
it determined that the statements, both those made to Strickhausen and those recorded
on the videotape, made by a distressed Reedy within one hour of the assault, were
sufficiently reliable and, thus, admissible as excited utterances.


 
C.       Refusal to Replay Videotape
          In his third point of error, Mumphrey complains of the trial court's refusal to allow
defense counsel to replay the videotape for the purposes of impeachment or clarification. 
The record does not conclusively show that Mumphrey made a formal request to the trial
court to replay the videotape. The issue arose during cross-examination of Strickhausen:
[DEFENSE].Okay. And I believe on the videotape she said -- when
you asked her if anybody witnessed it, she said, "The kids did"; is that right?
 
[WITNESS].No. The kids were in another room. They were not present
during the assault.
 
[DEFENSE].Okay. But do you recall just a second ago watching the video,
and you asked her, "Did anybody see this happen"?
 
[WITNESS].Uh-huh.
 
[DEFENSE].And she said, "The kids did"; is that right?
 
[WITNESS].I asked her -- yeah, if the kids --
 
[DEFENSE].No. You asked her, "Did anybody see it?"; is that right?
 
[WITNESS].Yes, I did.
 
[DEFENSE].On the tape?
 
[WITNESS].Yes, I did.
 
[DEFENSE].And on the tape she said, "The kids did," didn't she?
 
[WITNESS].No, sir, she didn't.
 
[DEFENSE].Do you want to play it again?
 
THE COURT.Let's not argue with the witness. The jury
has the evidence. They've got the tape. They can make these
decisions.

It is unclear whether the question, "Do you want to play it again?" was directed at
Strickhausen in response to the disagreement over what Reedy said on the videotape or
whether it was directed to the trial court. It is clear, however, that, regardless of the person
to whom the question was directed, the trial court determined that replaying the videotape
was unnecessary since the jury had seen the videotape. On appeal, Mumphrey complains
of the trial court's refusal to play the videotape again. 
          1.       Standards of Review
          We will read this point of error as raising Mumphrey's complaint about exclusion of
evidence and the trial court's conduct of the trial. The trial court's evidentiary rulings are
subject to review for an abuse of discretion. Green, 934 S.W.2d at 101–02. Likewise, the
trial court enjoys broad discretion in the conduct of the trial and the questioning of
witnesses; its rulings on these matters will also remain undisturbed absent an abuse of
discretion. Suiter v. State, 165 Tex. Crim. 578, 310 S.W.2d 81, 82 (1958); Richardson v.
State, 753 S.W.2d 759, 770 (Tex. App.—Dallas 1988, no pet.).
          2.       Refusal to Replay Videotape Was Not an Abuse of Discretion
          First, the statement at issue was not a prior inconsistent statement by Strickhausen
and therefore could not serve to impeach him on that basis. Rule 613 governs the
admissibility of prior inconsistent statements for purposes of impeachment. Tex. R. Evid.
613. The purpose of impeachment evidence is to discredit the veracity of the witness.
          Rule 613's requirements were not met. There is no inconsistent statement by
Strickhausen.


 He may have been mistaken about who said what on the videotape, but
he never made an inconsistent statement as to this particular matter. The prior
inconsistent statement is not his; Reedy made the statement at issue regarding whether
the children in the house witnessed the assault. This is not proper impeachment of
Strickhausen based on a prior inconsistent statement by him. The videotaped statement
may have been proper impeachment evidence with respect to Reedy, but not
Strickhausen. The trial court did not abuse its discretion on this basis in overruling
Mumphrey's request to replay the videotape.
          Second, the jury received this evidence by having seen the videotape one time.


 
Mumphrey asserts he should have been allowed to show it again. The trial court was well
within its discretion to limit the number of times the videotape was shown to the jury. We
overrule Mumphrey's third point of error.
D.       Exclusion of Evidence
          Mumphrey complains, in his fourth point of error, of the exclusion of three items of
evidence: 1) information regarding Reedy's tendency to imagine things that are not true
or real, 2) Reedy's testimony regarding whether she and Mumphrey had lived or been
together since the alleged assault, and 3) evidence that Reedy had assaulted Mumphrey. 
          1.       Standard of Review
          An appellate court reviews a trial court's decision to exclude evidence under an
abuse of discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001).
          2.       Preservation of Error: Offer of Proof
          The State argues Mumphrey failed to preserve error with respect to these
contentions because he failed to make a formal offer of proof. However, we must examine
the nature of the excluded evidence in order to determine what steps must be taken to
preserve for our review a complaint regarding exclusion of evidence. See Virts v. State,
739 S.W.2d 25, 29 (Tex. Crim. App. 1987); Koehler v. State, 679 S.W.2d 6, 9 (Tex. Crim.
App. 1984). The Texas Court of Criminal Appeals has recognized a distinction between
a situation where the defendant desires to elicit certain, specific responses from a state's
witness but is precluded by the trial court from doing so, and a situation where the
defendant is not permitted to question a state's witness about a certain general subject that
might affect the witness' credibility. Virts, 739 S.W.2d at 29; Koehler, 679 S.W.2d at 9.
          a.       When a Formal Offer of Proof Is Necessary to Preserve Error
          In the former situation, dealing with exclusion of cross-examination intended to elicit
specific evidence, to preserve error for appellate review the defendant has two options: 
1) have the witness testify and answer the specific questions the defendant desires to ask,
but has been precluded from asking, in the presence of the jury; or 2) make an offer of
proof of the questions the defendant would have asked and the answers expected had
such questioning in the presence of the jury been permitted. Virts, 739 S.W.2d at 29; see
Tex. R. Evid. 103(b).
          In such a situation, absent one of the aforementioned methods, any claim of error
is not preserved for appellate review. Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App.
1998); Hambrick v. State, 11 S.W.3d 241, 243 (Tex. App.—Texarkana 1999, no pet.). This
situation calls for strict application of the Rules of Evidence regarding offers of proof: 
          (a) Effect of Erroneous Ruling. Error may not be predicated upon
a ruling which . . . excludes evidence unless a substantial right of the party
is affected, and
 
. . . . 
 
(2) Offer of proof. . . . the substance of the evidence was made
known to the court by offer, or was apparent from the context within which
questions were asked.

Tex. R. Evid. 103(a)(2); see Hambrick, 11 S.W.3d at 243.
          b.       When Less Than a Formal Offer of Proof Will Preserve Error
          When a trial court excludes evidence designed to call into question the witness'
"bias, interest, prejudice, inconsistent statements, traits of character affecting credibility,
or evidence that might go to any impairment or disability affecting the witness's credibility,"
the defendant has less rigid requirements to preserve error for appeal. Virts, 739 S.W.2d
at 29; Koehler, 679 S.W.2d at 9. To have preserved error when the issue before the
appellate court is whether appellant's counsel was denied the opportunity to question the
testifying State's witness in the presence of the jury generally about what might have
affected his or her credibility, the defendant need not have shown what his or her 
cross-examination would have affirmatively established; such defendant must merely have
established what general subject matter about which he or she desired to examine the
witness during the cross-examination and, if challenged, show on the record why such
testimony should be admitted into evidence. Virts, 739 S.W.2d at 29; Harris v. State, 642
S.W.2d 471, 479–80 (Tex. Crim. App. 1982).
          3.       Evidence of Reedy's Tendency to Imagine Things
          Before his cross-examination of Reedy, defense counsel brought before the trial
court his design to question Reedy on the following incident:
[DEFENSE].. . . I was going to ask her about an incident
where she called the number on Mr. Mumphrey's cell phone thinking that it
was some girl he was dating.
 
THE COURT.And your point would be?
 
[DEFENSE].Just towards credibility, towards [Reedy's]
tendency to kind of imagine things.
 
THE COURT.How do you know he wasn't dating her?
 
[DEFENSE].Don't know -- well, that's what that witness would
prove up.
 
THE COURT.I don't think for a girlfriend to think her
boyfriend was stepping out on her is something that is impeachable.
 
. . . .
 
[DEFENSE].. . . [I]t would go to bias or prejudice.
 
THE COURT.I see your point. I will not allow it.
 
. . . .
 
THE COURT.Do you want to make a further record on
it?
 
[DEFENSE].Well, no. You're telling me that I can't go into
that?
 
THE COURT.I'm telling you it's not relevant.

          a.       Complaint Preserved for Review
          From this exchange, we see that Mumphrey offered the excluded evidence to
undermine Reedy's credibility and/or to reveal Reedy's bias or prejudice. Such a purpose
renders this excluded evidence safely in the second scenario for which Mumphrey need
only have established the general subject matter which he desired to pursue during his
cross-examination. He indicates that the excluded evidence dealt with the theory Reedy
had only imagined Mumphrey's involvement with this unnamed female. The above
exchange clearly established the general subject matter Mumphrey intended to pursue on
cross-examination and, therefore, we conclude that Mumphrey's complaint of the trial
court's exclusion of this evidence is properly before us.
          b.       No Error In Exclusion of Evidence
          Generally, and within reason, the trial court should always allow the accused great
latitude to show any relevant fact that might tend to affect the witness' credibility. See
Virts, 739 S.W.2d at 29; Koehler, 679 S.W.2d at 9. Specifically, cross-examination of a
testifying state's witness to show that the witness has suffered a recent mental illness or
disturbance is proper, provided such mental illness or disturbance is such that it might tend
to reflect on the witness' credibility. Virts, 739 S.W.2d at 30. However, the trial court
retains wide latitude to impose reasonable limits on cross-examination based on concerns
about, among other things, harassment, prejudice, confusion of issues, and the witness'
safety. Id. at 28. Additionally, even when the trial court gives the wrong reason for its
decision, we are bound to sustain the trial court's decision if it is correct on any theory of
law applicable to the case. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).
          Although Virts holds that evidence of a mental illness is proper evidence to reflect
on a witness' credibility, Mumphrey's specific proffer here was not evidence of a mental
illness. We therefore agree with the trial court that such evidence was not relevant. If
Mumphrey's purpose was to show Reedy's mental condition, that condition was shown by
other evidence. Reedy testified on direct examination she is a paranoid schizophrenic. 
She also testified that her illness resulted in "major depression" and caused her to "hear
voices." The evidence proffered by Mumphrey did not show Reedy's mental condition, but
even if it did, it would have been cumulative. See Tex. R. Evid. 403. 
          Further, the trial court was within its discretion in excluding this proffered evidence
on the basis that such testimony would be prejudicial or run the risk of confusion of the
issues. Tex. R. Evid. 403. The trial court kept the focus on the most relevant issues and
did not allow Mumphrey to bring in collateral matters concerning the couple's relationship. 
We do not find an abuse of discretion in excluding the cumulative, potentially prejudicial
or confusing evidence of Reedy's suspicion that Mumphrey had another girlfriend. We
overrule Mumphrey's contention.
          4.       Evidence of Reedy and Mumphrey's Reconciliation
          Before his cross-examination of Reedy, Mumphrey also alerted the trial court of his
intent to question Reedy on the issue of her reconciliation and continued relationship with
him after this assault:
[DEFENSE].Okay. I think it's already been covered. And it
was brought up about her, you know, not being together with him, and we're
certainly going to bring in that they got back together. I don't know if that's
extraneous but --
 
THE COURT.Since this offense occurred?
 
[DEFENSE].Yes.
 
THE COURT.Not relevant.
Mumphrey argued that, because the State had questioned Reedy on the length and nature
of the couple's relationship before the incident, the State had opened the door to such
testimony. The trial court repeated its conclusion that an alleged reconciliation was "not
relevant to whether or not this event happened" and went on to explain that any testimony
from direct examination regarding the nature of the couple's relationship related only to the
time before the assault and that such testimony did not open the door to allow evidence
of reconciliation after the assault. 
          The excluded evidence in this case is that type for which the proponent must make
an offer of proof to preserve error. This evidence was designed to elicit certain specific
responses, responses which would not have any bearing on Reedy's bias, interest,
prejudice, inconsistent statements, traits of character affecting credibility, or evidence that
might go to any impairment or disability affecting credibility.
          The record does not contain an offer of proof of the evidence about which
Mumphrey complains.


 Without such an offer, we cannot determine whether there was
error in its exclusion. See Hambrick, 11 S.W.3d at 243. We overrule Mumphrey's
contention. 
          5.       Evidence of Reedy's Prior Assaults on Mumphrey
          Mumphrey urged the trial court to allow testimony of prior assaults by Reedy against
him to show her "bias or prejudice" or to reveal her "motive to fabricate" this incident. The
trial court concluded that, based on the evidence before the court at the time, such alleged
incidents were not relevant. 
          a.       Complaint Preserved for Review
          Viewing the record and applying the law on preservation of error in a manner
consistent with the approach enunciated in Virts, we conclude Mumphrey did preserve this
complaint for appeal. See Virts, 739 S.W.2d at 28–29. The testimony at issue was aimed
at revealing Reedy's bias or motive to fabricate and, therefore, trial counsel preserved error
when he demonstrated the general subject matter about which he wanted to cross-examine Reedy. Id.
          b.       No Error in Exclusion of Evidence
          The Rules of Evidence provide:
Specific instances of the conduct of a witness, for the purpose of attacking
or supporting the witness' credibility, other than conviction of crime as
provided in Rule 609, may not be inquired into on cross-examination of the
witness nor proved by extrinsic evidence.

Tex. R. Evid. 608(b).

          Under Rule 609, a prior criminal conviction can be used to attack the credibility of
a witness only if the crime was a felony or involved moral turpitude. Tex. R. Evid. 609(a). 
There was no showing that any of Reedy's alleged assaults on Mumphrey resulted in a
felony conviction or was a crime involving moral turpitude. Such alleged assaults were
therefore not admissible under this rule.
          Mumphrey contends, however, that such alleged assaults were admissible to show
Reedy's "bias or prejudice" or to reveal her "motive to fabricate" this incident. We
recognize the trial court's wide latitude to limit cross-examination out of concern for
harassment, prejudice, or confusion of issues. Although evidence of alleged prior assaults,
for which there were no charges, arguably might have some bearing on Reedy's motive to
fabricate, the danger is much higher that such evidence would serve to confuse the matters
before the jury. See Tex. R. Evid. 403. Evidence regarding Reedy's alleged, unreported
assaults against Mumphrey necessarily brings with it collateral matters beyond the purpose
stated by trial counsel. The trial court's ruling regarding this evidence centered on
relevance and did not fall outside the zone of reasonable disagreement. Salazar, 38
S.W.3d at 151. The trial court did not abuse its discretion by excluding this evidence. We
overrule Mumphrey's point of error to the contrary.
II.       JURY ARGUMENT
A.       Improper Jury Argument
          Mumphrey complains of the following argument the State made to the jury:
Ms. Reedy's emotional condition on the tape, you guys saw that. You saw
how scared she was, how she was crying. She was very scared of the
defendant at this time.

Mumphrey seizes on the language "at this time" to contend the State indicated that Reedy
was scared of Mumphrey at the time of trial. Mumphrey objected to the argument after the
jury retired to deliberate. 
          The trial court understood the State's argument to refer to that time, a reference to
the time immediately following the assault and during the videotaped interview. Mumphrey
requested an opportunity to reopen in order to address the argument and to offer the
previously excluded evidence of reconciliation. The trial court refused his request. 
B.       Mumphrey Did Not Preserve Error
          Generally, an objection must be made as soon as the ground for objection becomes
apparent. Ford v. State, 500 S.W.2d 827, 829 (Tex. Crim. App. 1973). More specifically,
in order to preserve jury argument error, an objection to the improper argument must be
made at the time of the argument. Valencia v. State, 946 S.W.2d 81, 83 (Tex. Crim. App.
1997); Johnson v. State, 604 S.W.2d 128, 132–33 (Tex. Crim. App. [Panel Op.] 1980);
Joines v. State, 482 S.W.2d 205, 208 (Tex. Crim. App. 1972). An objection to the state's
argument made after the jury has retired does not preserve error. Castillo v. State, 362
S.W.2d 320, 322 (Tex. Crim. App. 1962).
          Here, defense counsel objected to the State's closing argument following what
constitutes a full page in the record of further argument by the State and after the jury was
excused to deliberate. Therefore, the error in the State's argument, if any, is not properly
before this Court for review.
III.      INEFFECTIVE ASSISTANCE OF COUNSEL
          Mumphrey cites several alleged errors as rendering trial counsel's performance
deficient.


 He concedes that for many such alleged errors there may have been a tactical
reason for those acts or omissions. He focuses his argument, however, on trial counsel's
failure to "protect the record" by making an offer of proof regarding the excluded evidence. 
          In order for an appellant to show he or she received ineffective assistance of
counsel, such appellant must satisfy a two-pronged test: 1) it must be shown that
counsel's performance fell below an objective standard of reasonableness by identifying
acts or omissions showing that counsel's performance was deficient; and 2) it must be
shown that, but for counsel's deficient performance, there is a reasonable probability that
the outcome of the proceedings would have been different. Strickland v. Washington, 466
U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).
          Having concluded Mumphrey's trial counsel did preserve error with respect to at
least two of the three instances of which Mumphrey complains, we must determine whether
counsel's performance was deficient based on his failure to preserve error with respect to
evidence of Reedy and Mumphrey's reconciliation after the assault. 
          We hold the trial court's determination that evidence of reconciliation was irrelevant
was not an abuse of discretion, even if the error would have been properly before us. 
Having failed to demonstrate that evidence of reconciliation was admissible in this context,
Mumphrey has failed to demonstrate that counsel's performance fell below an objective
standard of reasonableness and, subsequently, would be unable to demonstrate a
reasonable probability that, but for the failure, the trial's outcome would have been
different.


 This point of error is overruled.
IV.     SUMMARY AND CONCLUSION
          Mumphrey's claimed error in allowing Strickhausen to express an opinion on
whether an assault had occurred was not preserved. Reedy's statements to Strickhausen
at the scene and the videotaped statements she made within one hour of the assault were
admissible under the excited utterance exception to the rule against hearsay. The trial
court's refusal to allow Mumphrey to replay the videotape was not an abuse of discretion. 
Neither was it an abuse of discretion to exclude evidence Reedy was suspicious that
Mumphrey had another girlfriend or that Reedy had assaulted Mumphrey. Complaint about
the exclusion of evidence that Mumphrey and Reedy reconciled after the assault was not
preserved for our review. Mumphrey also failed to preserve his complaint concerning the
State's closing argument. Despite the failures to preserve alleged error, Mumphrey
received effective assistance of counsel.
          We affirm the judgment.
 
 
                                                                Donald R. Ross
                                                                Justice

Date Submitted:      August 6, 2004
Date Decided:         January 19, 2005

Publish