Affirmed and Opinion filed June 21, 2005









Affirmed
and Opinion filed June 21, 2005.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00055-CR

____________

 

ARMANDO HERNANDEZ,
JR.,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 939,761

 



 

O P I N I O N








Appellant, Armando Hernandez, Jr., was convicted
by a jury of capital murder and sentenced to life in the Texas Department of
Criminal Justice, Institutional Division. 
Maintaining that he did not intend to kill the complainant, that he
intended only to rob him, appellant challenges his conviction on seven grounds:
(1) the trial court erred in not charging the jury on the lesser-included
offense of theft; (2) the evidence was legally insufficient to prove that
appellant was guilty of being a party to capital murder; (3) the trial court
erred in excluding a statement appellant made that he claims is material to his
defense; (4) the trial court erred in overruling appellant’s objection to
allegedly improper jury argument; (5) the trial court’s instruction allowing a
finding of guilt based on conspiracy, which was not alleged in the indictment,
denied appellant due process; (6) and (7) the trial court erred in allowing the
State to offer extraneous offense evidence of appellant’s drug transactions,
which he claims violated Texas Rules of Evidence 404(b) and 403.  We affirm.

Because several of appellant’s issues
require us to review the evidence presented at trial, we will move directly to
appellant’s issues without presenting a statement of facts.

I.        No
Charge on the Lesser-included Offense of Theft

In his first issue, appellant contends the
trial court erred in not charging the jury on the lesser-included offense of
theft.  Appellant argues he was entitled
to this charge because he testified that he went to the complainant’s house
only to rob him, and did not plan for, anticipate, or participate in, his
killing, and all he did was remove what he intended to steal.  On these facts, however, we disagree that
appellant was entitled to this charge.

We apply the following two‑prong
test to determine if a defendant is entitled to a charge on a lesser-included
offense:  (1) the lesser-included offense
must be included within the proof necessary to establish the offense charged;
and (2) some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the
lesser-included offense.  Wesbrook v.
State, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000) (en banc); Rousseau v.
State, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993) (en banc).  We review all the evidence presented at trial
in making this determination.  Rousseau,
855 S.W.2d at 673.








A person commits capital murder if he
intentionally commits murder in the course of committing or attempting to
commit robbery.  See Tex. Penal Code § 19.03(a)(2).  Appellant was charged with unlawfully, while
in the course of committing and attempting to commit the robbery of Christopher
Harrell, intentionally causing the death of Christopher Harrell by shooting him
with a deadly weapon, namely, a firearm, on January 29, 2003.  The court’s charge authorized the jury to
convict appellant as a party to the offense under Penal Code sections 7.02(a)
and 7.02(b).  In addition to capital
murder, the jury was charged on the lesser-included offenses of aggravated
robbery and robbery. 

The State concedes that theft may be a
lesser-included offense of capital murder in this case.  Therefore, assuming arguendo that the
first prong of the test is met, we turn to the second prong.  To be entitled to a jury instruction on the
lesser-included offense of theft, the record must contain evidence proving
appellant committed a theft of the complainant’s property, but did not injure
or threaten him in any way and did not make him fearful of imminent physical
injury.  See Tex. Penal Code § 31.03(a); Holiday
v. State, 14 S.W.3d 784, 788 (Tex. App.—Houston [1st Dist.] 2000, pet.
ref’d).  The credibility of the evidence
and whether it conflicts with other evidence must not be considered in deciding
whether the charge on the lesser-included offense should be given.  Saunders v. State, 840 S.W.2d 390, 391
(Tex. Crim. App. 1992) (en banc). 
Regardless of the strength or weakness of the evidence, if evidence from
any source raises the issue that the defendant is guilty only of the
lesser-included offense, then the charge must be given.  Id. 
The following evidence from trial shows that appellant cannot meet this
standard because his plan to rob Harrell involved placing Harrell in fear of
imminent bodily injury.

At trial, appellant testified that he had
been laid off from his job and was behind on his bills, so he decided to rob
Christopher Harrell of his guns. 
Appellant had sold drugs to Harrell for several years and knew he owned
at least one handgun and an assault rifle. 
He initially asked Ramon Villareal to help him rob Harrell, but when
Villareal refused, appellant asked Juan Pena to go with him.  Appellant told Michael Salazar about his plan
to rob Harrell and asked Salazar if he would drive him to Harrell’s house.  Appellant told Salazar that his plan was to
wrestle Harrell down and tie him up with duct tape.  According to appellant, neither he nor Pena
brought a weapon to Harrell’s house.








Appellant testified that, on January 29,
2003, Harrell had called him and asked for some drugs.  Appellant called Harrell to tell him he was
on the way to his house to bring him the drugs. 
Salazar drove appellant and Pena. 
When they arrived, Harrell, appellant, and Pena went inside; Salazar
waited outside.  In the house, appellant
saw Harrell and Pena smoking crack cocaine, and he asked to use the
restroom.  According to appellant, his
plan included having Harrell and Pena get high, and then “we were going to
catch him off guard and wrestle him up and tape him up.”  When appellant came out of the restroom, he
saw Harrell showing Pena a gun.  As
appellant watched, Pena shot Harrell twice. 
Appellant denied that he planned or intended the shooting.  After Pena shot Harrell, appellant collected
Harrell’s guns and other items, and he, Pena, and Salazar left.  At some point as they drove, Pena handed
appellant a handgun, and, while they were crossing a bridge, appellant threw it
out the car window into the river below. 
The handgun was never recovered. 

Thus, by appellant’s own account, he
planned the robbery and he knew the crime would involve confronting, subduing,
and robbing Harrell.  His plan included
getting Harrell high, wrestling him down, and binding him with duct tape.  Appellant’s intended actions, therefore,
encompassed more than just theft.  At
best, his testimony entitled him to a charge on the lesser-included offense of
robbery—a charge he received.  See Tex. Pen. Code § 29.02(a).[1]  Moreover, the charge instructed the jury on
the law of parties, and it is uncontroverted that either appellant or Pena used
a deadly weapon during the robbery.  On
these facts, no evidence exists that appellant, if guilty, is guilty only of
theft.  See Hanson v. State, 55
S.W.3d 681, 698–99 (Tex. App.—Austin 2001, pet. ref’d) (holding that appellant
convicted of capital murder, who gave statement that he did not want to
participate in robbery of victim, did not actually hit or cut victim, and only
committed post-homicide theft, was not entitled to jury charge on
lesser-included offense of theft); cf. Bignall v. State, 887 S.W.2d 21,
23–24 (Tex. Crim. App. 1994) (en banc) (appellant convicted of aggravated
robbery was entitled to theft instruction when some evidence existed that no
deadly weapon was used or exhibited during alleged robbery).  We overrule appellant’s first issue. 








II.       Legal
Sufficiency of the Evidence

In his second issue, appellant contends
the evidence is legally insufficient to prove beyond a reasonable doubt that
appellant was guilty of being a party to capital murder.[2]

A.      Applicable
Law

The jury was authorized to find appellant
guilty of capital murder either as a principal to capital murder, or as a party
under Texas Penal Code sections 7.02(a)(2) or 7.02(b).  Under the law of parties, a person may be
convicted as a party to an offense if the offense is committed by his own
conduct or by the conduct of another for which he is criminally
responsible.  Tex. Penal Code § 7.01(a). 
Section 7.02(a)(2) provides that a person is criminally responsible for
an offense committed by the conduct of another if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense.  Tex.
Penal Code § 7.02(a)(2).  Section
7.02(b) provides that if, in the attempt to carry out a conspiracy to commit
one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
carrying out the conspiracy.  Tex. Penal Code § 7.02(b). 








When, as here, a jury returns a general
verdict and the evidence is sufficient to support a guilty finding under any of
the allegations submitted, the verdict will be upheld.  See Rabbani v. State, 847 S.W.2d 555,
558 (Tex. Crim. App. 1992) (en banc). 
Evidence is sufficient to convict under the law of parties when the
defendant is physically present at the commission of the offense and encourages
its commission by words or other agreement. 
Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op.
on reh’g).  In determining whether a
defendant participated as a party in the commission of an offense, the fact
finder may look to events that occurred before, during, or after the offense,
and may place reliance on acts showing an understanding and common design.  Ransom v. State, 920 S.W.2d 288, 302
(Tex. Crim. App. 1996) (op. on reh’g).  Id.  Further, circumstantial evidence may be used
to prove party status.  Id.

B.      Application
of Law to Facts

Appellant contends the evidence is legally
insufficient to convict him as either a primary actor or as a party who was
acting with intent to promote or assist the commission of an intentional
murder, because the evidence shows that Juan Pena, not he, was the shooter, and
appellant did not intend to commit anything more than a robbery.  So, he contends the only basis upon which the
jury could have convicted him was as a party under Texas Penal Code section
7.02(b).  Assuming the correctness of
this premise, appellant contends guilt cannot be proven under section 7.02(b)
because the evidence is legally insufficient to prove that murder was an
offense he should have anticipated as a result of carrying out the
robbery.  We disagree with appellant’s
characterization of the evidence and his conclusions.

1.       Evidence
of Guilt as a Principal

First, the evidence is legally sufficient
to permit a rational jury to determine that appellant was guilty of capital
murder as a principal.  Viewing the
evidence in the light most favorable to the jury’s verdict, it showed that
appellant had been selling illegal drugs to Harrell and knew that Harrell owned
various guns and other valuables. 
Appellant formulated a plan to rob Harrell, and tried to recruit Ramon
Villareal to help him.  Villareal
testified that appellant told him that, because appellant knew Harrell,
appellant would have to kill him.[3]









On January 29, 2003, after recruiting
Michael Salazar to drive and Juan Pena to accompany him, appellant went to
Harrell’s house ostensibly to sell Harrell some crack cocaine.  Harrell was then shot and killed in his
living room.  The evidence showed one
bullet missed Harrell, but he then was shot in his face as he stood in his living
room, and was shot in his temple after he fell to the floor.  

After Harrell was shot, appellant and Pena
took Harrell’s guns and also took ammunition, fishing equipment, and other
items from Harrell’s house.  Appellant
and Pena carried the property to the car and told Salazar to drive to Anthony
Tunal’s house, where they would store the stolen property temporarily.  On the way, appellant rolled down the car
window and threw a handgun out of the window as they passed over the
river.  Salazar testified that he asked
appellant what he was doing and what had happened, and appellant responded, “I
shot him.”  Salazar asked, “Is he
dead?”  Appellant said, “I think
so.”  

That night, appellant and Pena burned
clothing at Petra Cortina’s house. 
Appellant asked Cortina to help him find a buyer for the stolen weapons,
and appellant eventually sold the weapons for money and drugs.  He gave a portion of the drugs to Pena and
Cortina.[4]  

Viewing the evidence in the light most
favorable to the jury’s verdict, a rational jury could find beyond a reasonable
doubt that appellant shot and killed Harrell during the course of committing
the robbery, and that he was therefore guilty of capital murder as a principal.


2.       Evidence
of Guilt under Section 7.02(b)

In addition to finding legally sufficient
evidence of guilt as a principal, we also find the evidence is legally
sufficient to support a finding of guilt as a party under Texas Penal Code
section 7.02(b).  By appellant’s own
admission, he and Pena planned the robbery. 
Thus, the only question is whether appellant should have anticipated
Harrell’s shooting during the course of the aggravated robbery.








Relying on several factors, appellant
contends the record contains no evidence to support a rational inference that
he should have anticipated this outcome. 
First, he points out that Salazar testified that he did not see any guns
on appellant or Pena; this corroborated appellant’s claim that neither he nor
Pena possessed any firearms when they went to Harrell’s house.[5]  Next, he suggests the physical evidence
corroborates his testimony that Harrell was killed with his own gun while
showing it to Pena.  Finally, although
evidence showed that Pena was prone to violence, no evidence established that
appellant knew Pena had a propensity to commit murder.  For the reasons set out below, these
arguments are not convincing.

Although no direct evidence shows that
appellant or Pena was armed when they went to Harrell’s house, appellant, by
his own admission, planned to confront Harrell, subdue him, and take his guns.  In spite of denying that he knew about Pena’s
reputation and testifying that he only recruited him on the recommendation of
Villareal, on cross-examination, appellant admitted that he knew Pena from the
neighborhood, and he admitted that he knew that Pena had a history of carrying
knives and had served time in the penitentiary. 
Appellant also testified that part of the plan to subdue Harrell was to
have Pena and Harrell smoke crack cocaine before wrestling Harrell down and
tying him up.  On these facts, the jury
was entitled to find that appellant should have anticipated that one of the
many parts of his plan—whether it be smoking crack cocaine, subduing Harrell,
or stealing Harrell’s guns—could result in Harrell being shot with one of his
guns.  See Moore v. State, 24
S.W.3d 444, 446–47 (Tex. App.—Texarkana 2000, pet. ref’d) (stating that
individual planning to rob a residence should anticipate that a confrontation
might occur and that coconspirator, if not already armed, might arm himself
with items or weapons found in the residence). 

We overrule appellant’s second issue.

III.      Excluding
Appellant’s Statement








In his third issue, appellant contends the
trial court reversibly erred when it excluded his statement that he only
intended to commit a robbery.  During the
cross-examination of one of the State’s witnesses, Petra Cortina, appellant
attempted to elicit testimony that appellant told her he only intended to rob
Harrell, and that Juan Pena killed him. 
The trial court sustained the State’s objection to the statement as
hearsay.  

On appeal, appellant contends the
statement was admissible as a statement against interest and to show his state
of mind to counter the State’s position that he was a party to capital
murder.  Appellant also argues that the
exclusion of the evidence violated his constitutional right to due process
because it prevented him from presenting a defense.  As we explain below, we conclude that the
statement was not admissible as a statement against interest or to show
appellant’s state of mind, and we conclude that appellant failed to preserve
his complaint of alleged constitutional error.

A.      Statement
Against Interest

A statement against interest is one “which
was at the time of its making so far contrary to the declarant’s pecuniary or
proprietary interest, or so far tended to subject the declarant to civil or
criminal liability . . . that a reasonable person in declarant’s position would
not have made the statement unless believing it to be true.”  See Tex.
R. Evid. 803(24).  To be
admissible, a statement tending to expose the declarant to criminal liability
must be corroborated by circumstances clearly indicating its
trustworthiness.  Id.  We review a trial court’s decision to admit
or exclude evidence of a statement against penal interest for abuse of
discretion.  Cunningham v. State,
877 S.W.2d 310, 313 (Tex. Crim. App. 1994) (en banc).








Rule 803(24) does not apply to the
appellant’s statement to Cortina, because the statement was not contrary to his
interest, in fact it absolved him of criminal liability.  Any inculpatory significance of the
statement—i.e., admitting involvement in a robbery—is minor in comparison to
the self-serving nature of appellant’s statement that he did not plan or
anticipate the shooting.  See Wood v.
State, 18 S.W.3d 642, 651 (Tex. Crim. App. 2000) (holding that statements
that tend more to exonerate than to inculpate appellant of criminal liability
were not statements against interest); see also Davis v. State, 970
S.W.2d 758, 760–61 (Tex. App.—Austin 1998, pet. ref’d) (holding statement of
appellant convicted of robbery, in which he confessed only to theft and made
other self-serving statements, was not admissible as a statement against penal
interest).  The statement, if believed,
would have entitled him to an acquittal on the capital murder charges and a
finding of guilty on a lesser-included offense. 
Thus, it falls outside the statement-against-interest exception.  See Wood, 18 S.W.3d at 651.

B.      State
of Mind

Nor do we find that appellant’s statement
was intended to show his then-existing state of mind.  Rule 803(3) creates an exception to the
hearsay rule for a “statement of the declarant’s then existing state of mind,
emotion, sensation, or physical condition (such as intent, plan, motive,
design, mental feeling, pain, or bodily health), but not including a statement
of memory or belief to prove the fact remembered or believed . . . .”  See Tex.
R. Evid. 803(3).  When appellant
spoke to Cortina, he described the events of the robbery and murder and told
her that he never intended to shoot Harrell. 
This evidence describing the events is specifically excluded from the
state of mind exception.  Tex. R. Evid. 803(3); see also
Glover v. State, 102 S.W.3d 754, 762–63 (Tex. App.—Texarkana 2002, pet.
ref’d).  And case law has held that, to
the extent the hearsay statement implicates the declarant’s intent, plan, or
motive, the statement must relate to future, not past, conduct.  See id. (citing Jones v. State,
515 S.W.2d 126, 129 (Tex. Crim. App. 1974)). 
Thus, both the descriptive evidence and the evidence of past intent were
inadmissible.[6]

C.      Due
Process








Finally, appellant contends that excluding
the statement deprived him of his constitutional right to due process.  However, having failed to object at trial on
this ground, appellant did not preserve the complaint for appellate
review.  See Tex. R. App. P. 33.1(a); Broxton v.
State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (en banc) (holding
appellant failed to preserve complaint he was denied right to present a defense
and right to due process or course of law in violation of the United States
Constitution and the Texas Constitution when he did not raise those objections
below).  We overrule appellant’s third
issue.

IV.      Improper
Jury Argument

In his fourth issue, appellant contends
the trial court erred in overruling his objection to this portion of the State’s
rebuttal closing argument:

See, he told you, it’s all Pena’s
fault because Pena is crazy; I had no idea he was going to kill [Harrell].  You know what?  It’s a brilliant defense, and it’s very
convenient because he knows I can’t make Juan Pena take that stand and
testify.  He knows I can’t put Juan Pena
up there and force him to –

***

He knows I can’t make Pena take the stand and incriminate
himself in a capital murder.  He can say
anything about Juan Pena he wants to because he knows that I can’t refute it.

Appellant contends this argument improperly injected
facts outside the record, and “it was an attempt to use the exercise of a
constitutional right to the detriment of the Appellant.”  The State responds that the comments were a
direct response to appellant’s closing arguments and thus constituted proper
jury argument.  Although it presents a
close issue, upon examination of the record, we agree with the State. 








Proper jury argument must fall within one
of four areas: (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to opposing counsel’s arguments; or (4) a plea for law
enforcement.  Wesbrook, 29 S.W.3d
at 115.  The prosecution may argue
outside the record in responding to the defense having done so, but may not
stray beyond the scope of the invitation.  Wilson v. State, 938 S.W.2d 57, 60–61
(Tex. Crim. App. 1996) (en banc), abrogated on other grounds, Motilla
v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002).  Even when an argument exceeds the permissible
bounds of these areas, the error is not reversible unless, in light of the
record as a whole, the argument is extreme or manifestly improper, violative of
a mandatory statute, or injects new facts harmful to the defendant into the
trial proceeding.  Wesbrook, 29
S.W.3d at 115.  The prosecutor’s remarks
must have been a willful and calculated effort to deprive the defendant of a
fair and impartial trial.  Id.

Throughout the trial, appellant maintained
that Pena, not he, shot Harrell, and that he did not know Pena was violent and
unpredictable.  Defense counsel also had
Pena brought to the courtroom for identification.  And, during appellant’s closing argument, he
stated the following:

[Appellant] has
told you what happened.  They went over
there without guns.  Michael Salazar told
you they went over there without guns. 
They went over there with no intent to cause anybody’s death.  And there is not one bit of evidence from
this stand that my client knew beforehand the total psychopathic nature – – 

The State objected that counsel was arguing outside
the record because there was no evidence in the record as to the mental
condition or state of mind of Juan Pena, and the trial court ordered defense
counsel to stay within the record. 
Defense counsel then continued:

You heard each of their witnesses
describe to you Juan Pena, whether it was on direct or cross-examination.  You saw him come in the court.  You can draw your own mental image of what
kind of person he was and you heard what those witnesses thought of him and how
they feared him. 

Now, the question is: Did my client know the same things
that they knew so he could have anticipated that [Pena] was going to do
something crazy?

At the conclusion of appellant’s closing argument, the
State made its rebuttal closing argument, in which it made the statements about
which appellant complains.








We find that the State’s argument was in
response to opposing counsel’s argument. 
Appellant did not expressly question why the State did not present Pena
as a witness to rebut his defense, but he did so implicitly by making Pena’s
complicity the cornerstone of his defense: 
Pena was the principal actor, Pena was violent and unpredictable, and
because appellant did not know of Pena’s violent propensities, he could not
have anticipated that Pena would shoot Harrell in the course of the
robbery.  Additionally, because defense
counsel presented Pena to the jury, the jury knew that either side could have
called him as a witness, but did not. 
The jury reasonably could question why the State did not call Pena as a
witness.  As a result, we cannot conclude
the State’s response to this question was improper.    

Appellant’s other claim on appeal—that he
was penalized by the prosecutor’s argument that Pena might invoke his
constitutional right not to testify—was not made in the trial court.  He objected only that the statements were
improper jury argument.[7]  That objection did not alert the trial judge
that appellant objected to the statements because he believed the State used
Pena’s constitutional right not to testify as a way of penalizing appellant.  Not having made the argument in the trial
court, appellant has waived it.  See Tex. R. App. P. 33.1(a); Turner v.
State, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002), cert. denied, 538
U.S. 965 (2003) (holding appellant failed to preserve error concerning prosecutor’s
closing argument when appellate complaint did not comport with objection made
at trial); see also Edwards v. State, 97 S.W.3d 279, 287 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref’d) (holding appellant failed to
preserve complaint on appeal that prosecutor improperly asserted appellant was
confusing or misleading the jury, when appellant’s objection at trial was that
prosecutor’s argument placed the burden of proof on the defense). 

We overrule appellant’s fourth issue.

V.      Instruction
on Finding of Guilt under Law of Conspiracy








In his fifth issue, appellant contends
that the trial court erred in instructing the jury on the law of conspiracy,
when the indictment did not allege a conspiracy.  Appellant contends that, as a consequence, he
was found guilty of an offense not charged in the indictment and for which he
was not placed on notice, in violation of his rights to due process under the
Fifth and Fourteenth Amendments to the United States Constitution.  We find his argument without merit.

The charge authorized the jury to convict
appellant under three theories of capital murder: (1) as a principal, (2) as a
party under section 7.02(a)(2) of the Texas Penal Code, or (3) as a conspirator
under the law of parties as contained in Penal Code section 7.02(b). Tex. Pen. Code § 7.02(a)(2), (b).  The Court of Criminal Appeals repeatedly has
rejected similar claims that a charge on the law of parties constitutes an
impermissible amendment to an indictment. 
In Marable v. State, the court reiterated that “it is well‑settled
that the law of parties need not be pled in the indictment.”  85 S.W.3d 287, 287 (Tex. Crim. App. 2002) (en
banc) (citing cases).  This rule applies
to the law of parties found in both section 7.02(a)(2) and section
7.02(b).  Montoya v. State, 810
S.W.2d 160, 165 (Tex. Crim. App. 1989) (en banc) (“Our examination of case law
shows that the theory of criminal responsibility set forth in Section 7.02(b)
has often been applied in capital murder cases.”); see also Ammons v. State,
782 S.W.2d 539, 540–41 (Tex. App.—Houston [14th Dist.] 1989, no pet.).  We are bound to follow this precedent.

We overrule appellant’s fifth issue.

VI.      Extraneous
Offense Evidence (Issues 6 and 7)

In his sixth and seventh issues, appellant
contends that testimony regarding his extraneous drug transactions with Harrell
violated Rules of Evidence 404(b) and 403. 
We will reverse a trial court’s decision to admit evidence of an
extraneous offense only upon a showing of a clear abuse of discretion.  See Santellan v. State, 939 S.W.2d
155, 169 (Tex. Crim. App. 1997) (en banc).








Before Ramon Villareal testified,
appellant objected to any testimony regarding appellant’s prior drug activity
generally, and, more specifically, to testimony that Villareal accompanied
appellant to deliver drugs to Harrell at his home on a separate occasion before
the shooting.  The trial court sustained
the objection to his drug activity in general and overruled the objection to
delivery of drugs specifically to Harrell. 
The trial court again overruled defense counsel’s objections to
Villareal’s testimony when the State presented it to the jury.  During questioning by the State, Villareal
testified that, in January, he went with appellant to Harrell’s house because
appellant had asked Villareal to go with him to deliver crack cocaine.  Villareal also testified that, after
appellant delivered the cocaine to Harrell, he got back in the car with
Villareal and told Villareal that he wanted to rob Harrell of his guns, and
asked Villareal to come with him to rob Harrell.  At the start of appellant’s case, defense counsel, citing
Villareal’s testimony, objected to the State delving further into appellant’s
history of past drug transactions with Harrell. 
The trial court implicitly overruled his objection, offering instead to
give the jury a limiting instruction, if requested, when the evidence was
offered.[8]  Appellant then testified on direct
examination that he regularly sold drugs to Harrell over the course of their
six-year relationship before the shooting. 
The State also cross-examined appellant on some of the details of his
drug-related activities generally and as it related to his relationship with
Harrell.  We thus examine whether the trial court erred
in admitting this testimony over appellant’s objections.

In prosecutions for murder, article 38.36
of the Texas Code of Criminal Procedure provides in relevant part: 

In all prosecutions
for murder, the state or the defendant shall be permitted to offer testimony as
to all relevant facts and circumstances surrounding the killing and the
previous relationship existing between the accused and the deceased, together
with all relevant facts and circumstances going to show the condition of the
mind of the accused at the time of the offense. 

Tex. Code Crim. Proc. art.
38.36(a).  In Smith v. State, the
Court of Criminal Appeals held that evidence admissible under Article 38.36
still must meet the requirements of Rules 403 and 404(b).  5 S.W.3d 673, 679 (Tex. Crim. App. 1999).








Evidence of an extraneous offense may be
admitted if it has relevance apart from its tendency to prove the character of
a person in order to show that he acted in conformity therewith.  See Tex.
R. Evid. 404(b).  Evidence has
relevance apart from character conformity when it tends to establish some
elemental fact, such as proof of motive, intent, plan, or absence of mistake or
accident.  Id.; see also
Montgomery v. State, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990) (en
banc) (op. on reh’g); Aitch v. State, 879 S.W.2d 167, 174 (Tex.
App.—Houston [14th Dist.] 1994, pet. ref’d). 
And although relevant, evidence may be excluded under Rule 403 if its probative
value is substantially outweighed by the danger of unfair prejudice.  See Tex.
R. Evid. 403.  This analysis is to
be conducted by the trial judge in light of the unique facts and circumstances
of each case, and will not be disturbed on appeal unless it is outside the zone
of reasonable disagreement.  See
Montgomery, 810 S.W.2d at 391.  In
determining whether a trial court has abused its discretion in admitting
evidence, we measure the trial court’s ruling against the relevant criteria by
which a Rule 403 decision is to be made. 
See id. at 392.[9]









Appellant contends admitting the evidence
of appellant’s extraneous drug transactions with Harrell was error under Rule
404(b) because it was not relevant and was improperly offered to show appellant
was generally a criminal and drug dealer. 
He also complains it was overly prejudicial in violation of Rule
403.  However, appellant’s intent was a
material issue at trial, and his defense was that Pena, not he, shot and killed
Harrell, and he did not anticipate or intend for the shooting to occur.  The evidence of appellant’s prior drug
transactions was needed to establish the basis for his relationship with
Harrell and his familiarity with Harrell’s routine, his residence, and his
possessions, to reveal the basis for appellant’s plan to rob Harrell.  It also was relevant to whether appellant
intended to kill Harrell because Harrell knew and could identify him.  

Before this evidence was admitted, Salazar
testified that, when they arrived at Harrell’s house, Harrell shook hands with
appellant and welcomed appellant into his home. 
Moreover, the medical examiner testified that toxicology test results
showed that Harrell had used cocaine within an hour of his death, making the
evidence relevant to the circumstances surrounding Harrell’s cocaine use,
which, by appellant’s own admission, was part of his plan to rob Harrell.  As such, it was admissible under Rule 404(b)
because it was being used for purposes other than to establish mere character
conformity.  See Saxer v. State,
115 S.W.3d 765, 775 (Tex. App.—Beaumont 2003, pet. ref’d).  In addition, weighing the appropriate factors,
we also find that the probative value was not so slight so as to be
substantially outweighed by the danger of unfair prejudice to appellant.[10]   

We overrule appellant’s sixth and seventh
issues.

Conclusion

The trial court’s judgment is affirmed.

 

/s/      Wanda
McKee Fowler

Justice

 

Judgment
rendered and Opinion filed June 21, 2005.

Panel consists
of Chief Justice Hedges and Justices Fowler and Frost.

Publish — Tex. R. App. P.
47.2(b).          











[1]  A person
commits the offense of robbery if, in the course of committing theft and with
the intent to obtain or maintain control of property, he: (1) intentionally,
knowingly, or recklessly causes bodily injury to another; or (2) intentionally
or knowingly threatens or places another in fear of imminent bodily injury or
death.  Tex.
Pen. Code § 29.02(a).





[2]  We apply the standard of review
applicable to appellant’s legal insufficiency claim.  See Jackson v. Virginia, 443 U.S. 307,
319 (1979).





[3]  Although appellant denied making
the statement and defense counsel strenuously cross-examined Villareal
regarding whether appellant, in fact, said this, the jury was entitled to
determine Villareal’s credibility.  See
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc).





[4]  Cortina also
testified that, before the incident, appellant told her he was having “money
problems” and to get some he “had a lick,” which she understood to mean he
intended to kill someone for something.





[5]  Salazar also
testified he did not see either appellant or Pena with duct tape.





[6]  Appellant argues that Mullins v.
State supports his position, but that case is distinguishable.  See 767 S.W.2d 166 (Tex. App.—Houston
[1st Dist.] 1988, no writ), abrogated on other grounds, Brunswick v. State,
931 S.W.2d 9 (Tex. App.—Houston [1st Dist.] 1996, no writ).  In Mullins, an aggravated assault
case, the investigating officer was prohibited from telling the jury that, when
appellant was arrested immediately after the assault, he said that at the time
of the incident he was afraid of the complainant.  Id. at 170.  The appellate court held the statement was
relevant and admissible because it showed appellant’s state of mind at the time
he committed the offense.  Id.  Mullins is not on point because it
involved neither descriptive historical information nor information related to
intent, plan or motive; instead, it involved an emotion or mental state.  Id.





[7]  The State
argued that appellant’s objection was too general to preserve any error
concerning the prosecutor’s argument. 
However, in the context of this record, we find that the objection made
was sufficient to inform the trial judge and the prosecutor that appellant
objected to the prosecutor allegedly introducing matters outside the
record.  





[8]  The trial
court indicated that it would not limit the State and allow the jury to think
that “these people had known each other for a couple of months on a couple of
occasions when in fact they have known each other for years.”





[9]  We consider the following factors:
(1) how compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable—a factor which is related to the strength of
the evidence presented by the proponent to show the defendant, in fact,
committed the extraneous offense; (2) the potential the extraneous offense
evidence has to impress the jury in some irrational but nevertheless indelible
way; (3) the time the proponent will need to develop the evidence, during which
the jury will be distracted from consideration of the indicted offense; and (4)
the force of the proponent’s need for this evidence to prove a fact of
consequence, i.e., whether the proponent has other probative evidence available
to him to help establish this fact, and whether this fact related to an issue
in dispute.  See Manning v. State,
114 S.W.3d 922, 926 (Tex. Crim. App. 2003). 






[10]  Upon defense
counsel’s request for a Rule 403 analysis, the trial court stated:

 

I am basing
my ruling on the fact that certainly the relationship of the parties, the fact
that they knew one another, shedding light on the defendant being allowed
access to the complainant’s home, initially there’s already been reference to
how he shook hands and was welcomed into the home.  There’s testimony about drug usage at the
time, within an hour of death.  And the
relationship, all of that, certainly it becomes far more probative than
prejudicial.  So the objection to that
item is overruled.